

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2007

# USA v. Watson

Precedential or Non-Precedential: Precedential

Docket No. 05-3892

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Watson" (2007). *2007 Decisions.* Paper 1172.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1172

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3892

———

UNITED STATES OF AMERICA

v.

SAMUEL WATSON,

*Appellant*

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 04-cr-00392)
District Judge: Honorable Cynthia M. Rufe

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 13, 2007

Before: FUENTES, VAN ANTWERPEN, and SILER*,
*Circuit Judges*.

(Filed April 5, 2007 )


Maureen Kearney Rowley, Chief Federal Defender
David L. McColgin, Assistant Federal Defender, Supervising
Appellate Attorney
Federal Community Defender Office for the Eastern District
of Pennsylvania
Suite 540 West - Curtis Center
601 Walnut Street
Philadelphia, PA 19106
        *Counsel for Appellant*

Patrick L. Meehan, United States Attorney
Robert A. Zauzmer, Assistant United States Attorney, Chief
of Appeals
Karen L. Grigsby, Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
        *Counsel for the United States*

_____

*The Honorable Eugene E. Siler, Jr., Senior Circuit Judge for
the United States Court of Appeals for the Sixth Circuit,
sitting by designation.

---

OPINION OF THE COURT

---

VAN ANTWERPEN, *Circuit Judge*.

A federal grand jury returned an indictment on July 8, 2004, charging Appellant Samuel Watson with one count of bank robbery in violation of 18 U.S.C. § 2113(a). Watson pled guilty to the charge on February 11, 2005. On August 10, 2005, the District Court sentenced Watson to 120 months' imprisonment followed by three years of supervised release, and a special assessment of $100. Watson filed a timely appeal challenging the reasonableness of his sentence.

The District Court had jurisdiction over this criminal case under 18 U.S.C. § 3231. We have jurisdiction over Watson's appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). *See United States v. Cooper*, 437 F.3d 324, 327 (3d Cir. 2006). For the reasons set forth below, we will affirm.

*I.*

We will set forth only those facts necessary to our analysis.

The facts of this case are undisputed. On June 14, 2004, Watson walked into the United Bank in Philadelphia, handed the teller a demand note, and fled with $1,940.00. A bank employee

alerted police of the robbery and Watson was apprehended shortly thereafter. At the time of his arrest, police noticed a bulge in Watson's pocket, from which they recovered a hair brush and the stolen money. Later that day, Watson gave a full confession to the FBI, signed his demand note, and explained that he robbed the bank because he had lost his disability payments and his apartment.

In the Presentence Investigation Report ("PSR"), the probation officer assigned Watson a total offense level of 29 and a criminal history category of VI,[1] resulting in a recommended Guidelines range of 151 to 188 months' imprisonment. The PSR also provided information related to Watson's personal characteristics that was highly relevant during his sentencing hearing. It stated that Watson had contracted AIDS during the early 1980s and had been under the medical care of his personal physician for 13 years to treat the illness. Watson reported physical and health-related problems while incarcerated at the Federal Detention Center because he was not receiving the proper medications. The PSR also reported that Watson experienced depression due to the lack of proper medical care and his worsening physical condition. Finally, it detailed Watson's long history of substance abuse, which began when he was 13 years old.

On May 16, 2005, the District Court held a sentencing hearing. At this hearing, the Court heard from counsel for

---

[1]The PSR stated that Watson had at least sixteen prior adult criminal convictions.

Watson, counsel for the United States, and Watson himself. After discussing Watson's long criminal record, his history of substance abuse, his medical condition, and his mental health issues, the Court ordered a psychological evaluation, explaining that "it would help at the very minimum in classification." Supp. App. at 36. The psychological evaluation indicated that Watson fell within the borderline mentally retarded range of intelligence. The cause of his diminished cognitive functioning was unclear, but could include developmental and medical factors such as his premature birth followed by extended hospitalization, family and developmental interferences, alcohol and drug abuse, and his diagnosis as HIV positive. The psychologist diagnosed Watson as suffering from dysthymic disorder, cocaine abuse, and alcohol abuse.

On August 9, 2005, after reviewing the psychological evaluation, the District Court reconvened the sentencing hearing. It sentenced Watson to 120 months' imprisonment, three years of supervised release, and a special assessment of $100. The District Court imposed special conditions on the supervised release, ordering Watson to participate in drug and alcohol after-care treatment and mental health treatment and to submit to regular drug testing.

*II.*

Watson claims his sentence is unreasonable in light of his

severe medical condition and short life expectancy.[2] He also claims the District Court inappropriately imposed the sentence, in part, to further medical treatment and rehabilitative goals, in contravention of the provisions of 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k).

In *United States v. Booker*, 543 U.S. 220, 261 (2005), the Supreme Court directed the courts of appeals to review a district court's imposition of a criminal sentence for reasonableness. Subsequently, in *United States v. Cooper*, 437 F.3d 324 (3d Cir. 2006), we established the framework for such a review. We explained that we first consider whether the district court exercised its discretion by considering the relevant § 3553(a)

---

2The District Court explained its decision to impose a sentence below the Guidelines range both in terms of a downward departure under the Guidelines and a variance from the Guidelines in light of the factors listed in 18 U.S.C. § 3553(a). We do not have jurisdiction to review a District Court's discretionary decision to deny a departure or appeals by defendants challenging the extent of a downward departure. *United States v. Cooper*, 437 F.3d 324, 332-33 (3d Cir. 2006) (citations omitted). However, we will view this sentence as a variance from the Guidelines range, rather than a downward departure, since Watson did not file a motion for a downward departure and argued for a below-Guidelines range sentence in light of the § 3553(a) factors. *See United States v. Vampire Nation*, 451 F.3d 198 (3d Cir. 2006). Accordingly, we have jurisdiction to review the imposition of this sentence for reasonableness. *Cooper*, 437 F.3d at 327.

factors.[3]    *Cooper*, 437 F.3d at 329 (citation omitted).

---

[3]These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . .

Specifically, we look to the record to see if the court gave "meaningful consideration" to the § 3553(a) factors and to any meritorious grounds properly raised by the parties. *Id*. We next ascertain whether those factors were "reasonably applied to the circumstances of the case." *Id*. at 330. That is, we evaluate whether the district court's reasons for imposing the sentence "are logical and consistent with the factors set forth in section 3553(a)." *Id*. (quoting *United States v. Williams*, 425 F.3d 478, 481 (7th Cir. 2005)). We apply a deferential standard, "the trial court being in the best position to determine the appropriate sentence in light of the particular circumstances of the case." *Id*. We will look at the substance of what the Court did and the entire sentencing transcript and "we will not elevate form over substance." *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006). The burden rests on the party challenging the sentence to show unreasonableness. *Cooper*, 437 F.3d at 332.

*A.*

Watson claims his sentence is unreasonable because it amounts to a life sentence for him in light of his serious medical condition and short life expectancy. We reject this claim and find the District Court's imposition of sentence to be reasonable. Taking into account his age and serious health condition, the District Court sentenced Watson to 120 months' imprisonment, a sentence that is appreciably lower than the bottom of the recommended Guidelines range. In reaching this sentence, the District Court acknowledged that the Guidelines

18 U.S.C. § 3553(a).

were advisory post-*Booker*, explicitly considered the relevant § 3553(a) factors, and reasonably applied those factors to the circumstances of Watson's case.

The record establishes that the District Court gave "meaningful consideration" to the § 3553(a) factors and the meritorious arguments properly raised by Watson. During the May 16, 2005 sentencing hearing, the District Judge explicitly considered: the seriousness of the bank robbery offense; Watson's history and personal characteristics, including his serious medical condition, his history of substance abuse, and his mental health issues; the need to promote respect for the law; the need to impose a sentence that would deter Watson and others like him in the community from committing future crimes; and the need to protect the public from Watson. Moreover, the District Judge reiterated these considerations during the August 9, 2005 sentencing hearing, stating:

> I appreciate that counsel recognizes the difficulty that the Court has when it sees a record of a person that absolutely deserves the high end of the guidelines and then is presented with the personal characteristics that make the defendant appear to be more vulnerable than his record would seem. Yet, the sentence objectives that I deter criminal conduct, have to deter Mr. Watson from committing more crimes as well as other people who may be impressed with the sentencing, to reflect the seriousness of this offense and promote respect of the law which I think escapes Mr. Watson completely, despite the fact of his prior fifteen convictions. He was sentenced and punished and still didn't get it. There has

to be a just punishment . . . ."

Watson's App. at 38-39. This record amply demonstrates the District Judge's understanding that the Guidelines are advisory and her meaningful consideration of the sentencing factors in reaching Watson's sentence.

Furthermore, the District Court's application of the sentencing factors to Watson's circumstances was reasonable. During the sentencing hearing, the District Court stated, "[a] 10 year sentence is as much as I am willing to give you in your state of health. Although I do that with a heavy heart. Because I don't know you will survive the 10 years." Watson's App. at 40. This statement evidences the Court's reasoned consideration of Watson's serious medical condition in imposing the sentence. The District Court exercised its discretion to sentence Watson well below the Guidelines range on account of his age and health issues. However, the mere fact that a defendant may not survive beyond his sentence does not provide a basis for a shorter sentence.

Moreover, under the facts, the District Judge had to consider factors other than Watson's health in reaching a reasonable sentence. She fashioned a sentence that would deter Watson and "others like him who may be thinking of ignoring the law in favor of their drug habit." Supp. App. at 17. She addressed Watson's failure to respect the law, as evidenced by his lengthy criminal history. And, she imposed a sentence that would protect the community from Watson's dangerous criminal activities. Because the District Court's reasons for imposing Watson's sentence were logical and consistent with the §

10

3553(a) factors, we find that Watson's sentence was reasonable.

*B.*

Watson also argues his sentence is unreasonable because it violates the provisions of 18 U.S.C. § 3582(a)[4] and 28 U.S.C. § 994(k).[5] Because Watson did not object to his sentence on this ground during the sentencing hearing, we review the District Court's judgment for plain error. To meet this standard, Watson must establish that: 1) the District Court committed an error; 2) the error was plain, i.e., it was clear under current law; and 3) the error affected substantial rights, i.e., it affected the outcome

---

[4]This section provides:
> The court, in determining whether to impose *a term of imprisonment*, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in § 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

18 U.S.C. § 3582(a) (emphasis added).

[5]This section provides: "The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to *a term of imprisonment* for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment." 28 U.S.C. § 994(k) (emphasis added).

11

of the proceedings. *United States v. Olano*, 507 U.S. 725, 732-34 (1993). If the elements of plain error are satisfied, the court of appeals has discretion to correct the error, but should only do so to prevent a miscarriage of justice. *Id*. at 735-36.

We have already spoken on the issue Watson raises. With regard to 18 U.S.C. § 3582(a), we held in *United States v. Manzella* that "[i]t is the policy of the United States Congress . . . that defendants not be sent to prison or held there for a specific length of time for the sole purpose of rehabilitation." *United States v. Manzella*, 475 F.3d 152, 161 (3d Cir. 2007). We quoted from the Senate Report accompanying the Sentencing Reform Act:

> This caution concerning the use of rehabilitation as a factor . . . is to discourage the employment of a term of imprisonment on the sole ground that a prison has a program that might be of benefit to the prisoner. This does not mean, of course, that if a defendant is to be sentenced to imprisonment for other purposes, the availability of rehabilitative programs should not be an appropriate consideration, for example, in recommending a particular facility.

*Id*. at 159 (quoting S. Rep. No. 98-225 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3221). We also noted that "[u]nlike § 3582(a) . . . § 994(k) is a directive to the U.S. Sentencing Commission, not to sentencing courts." *Id*. at 158 n.2 (citing *United States v. Hawk Wing*, 433 F.3d 622, 629 n.5 (8th Cir. 2006); *United States v. Hardy*, 101 F.3d 1210, 1212-13 (7th Cir. 1996); *United States v. Duran*, 37 F.3d 557, 561 (9th Cir.

12

1994)).  Accordingly, § 994 applies to the Sentencing Commission in formulating the advisory Guidelines and has no direct application to the matter before us.

The plain language of § 3582(a) does not prevent a court from considering correction and rehabilitation in fashioning the defendant's entire sentence, including the making of recommendations as to where and how the defendant should serve a sentence of imprisonment and the formulation of special conditions of supervised release.  *See* 18 U.S.C. § 3583(c) (directing courts to consider § 3553(a)(2)(D) – the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner).  As we recognized in *Manzella*, the apparent conflict between §§ 3582(a) and 3553(a)(2)(D) is illusory because "[t]he terms 'sentence' and 'imprisonment' in the Sentencing Reform Act are different." 475 F.3d at 158. "'Sentence' has broad meaning.  It includes many types of possible punishment, only one of which is 'imprisonment.'" *Id*. (citation omitted).

What a court can not do is to impose or lengthen a term of *imprisonment* for the purpose of providing correction and rehabilitation.  As in all appeals, the burden is on the appellant[6]

---

[6]*See Cooper*, 437 F.3d at 332 (appellant bears the burden of proving the sentence is unreasonable); *United States v. Kay*, 83 F.3d 98, 101 (5th Cir. 1996) (appellant bears the burden of proving the district court relied upon an invalid factor at sentencing).

13

to demonstrate that the District Court imposed a prison term or lengthened the term of imprisonment because of such considerations. The mere fact that a court may take into account or mention correction or rehabilitation along with other factors in arriving at or explaining its *sentence* is not enough, by itself, to meet this burden. Unlike the situation in *Manzella*, where the Court's improper motivation was clear from statements of the Court, there is no such showing in this case. In fact, the Court's express statements indicate exactly the opposite.

At the sentencing hearing, Watson's counsel raised the issue of medical care and rehabilitation by expressly asking the District Court to provide medical treatment and drug treatment as part of Watson's sentence. The District Court agreed, stating, "I am prepared wherever he may go today, however much time he may be given, and he will be given a prison sentence of course, to strongly recommend that he be classified to a medical facility and remain there . . . I still think that he needs to be tended to while he is in our care." Supp. App. at 9. The Court continued, "I am very, very concerned about the designation and the classification here, more than anything else in this case right now." *Id*. at 16. Accordingly, the District Court considered the need for medical treatment in the context of recommending to the Bureau of Prisons that Watson serve his sentence in a facility where he can receive necessary medical care. As noted, § 3582(a) does not prohibit the District Court from doing so.

Moreover, in discussing the status of Watson's health, the District Court explicitly stated, on the record, that it would not incarcerate Watson for the purpose of providing him with medical treatment: "So I have to almost trust that his medical

treatment incarcerated is keeping him going, and *that is the last reason I would put anyone in jail. . . .* But, if he is facing a long sentence anyway *because of all of the other reasons*, it doesn't dissuade me from keeping him in jail." Supp. App. at 35 (emphasis added). The District Court merely observed that Watson may benefit from the medical care he receives while serving an otherwise valid and proper term of imprisonment that is based on all of the other reasons, i.e., the § 3553(a) factors. The District Court explained that a 121-month term of imprisonment was necessary to achieve the relevant and appropriate sentencing goals outlined in § 3553(a), including just punishment, respect for the law, deterrence, and community protection. *See United States v. King*, 454 F.3d 187, 197 n.6 (3d Cir. 2006) (rejecting argument that district court improperly imposed a lengthier term of imprisonment for rehabilitative purposes because length of prison term was necessary to provide just punishment and deterrence).

Finally, the District Court clearly understood that it could consider rehabilitative needs only as part of Watson's larger sentence, and not in determining the appropriate length of imprisonment. The Court stated: "We're talking about whether or not there is a sentence that I can impose that justly punishes Mr. Watson to teach him a lesson, to rehabilitate him, because I see punishment as more than just time in jail." Watson's App. at 39. Significantly, the District Court ordered Watson to participate in drug and alcohol after-care treatment and mental health treatment as part of the conditions of his supervised release. These conditions are part of Watson's overall sentence, and his rehabilitative needs were appropriately considered in reaching this sentence. *See United States v. Tsosie*, 376 F.3d

15

1210, 1214 (10th Cir. 2004) ("Congress identified the factors, including medical and correctional treatment, that a court should consider when setting a 'term of supervised release'" (quoting 18 U.S.C. § 3583(c))).

Watson's brief selectively quotes portions of the sentencing hearing that have been taken out of context and ignores the proper reasons cited by the District Court for imposing the 121-month term of imprisonment. Viewed in context of the entire sentencing hearing, the District Court imposed a 121-month term of imprisonment for proper reasons under § 3553(a), varied from the Guidelines range by imposing a *lower* term of imprisonment on account of Watson's serious medical condition, took his medical needs into account in recommending that he be placed in a medical facility, and considered his rehabilitative needs in imposing special conditions on supervised release. The record is devoid of any evidence that the District Court imposed a longer term of imprisonment so that Watson could receive medical care and rehabilitative treatment. Accordingly, there was no error.

*III.*

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary. For the foregoing reasons, we will affirm the judgment of sentence.

16