

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-23-2008

# USA v. Hamilton

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4504

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Hamilton" (2008). *2008 Decisions.* Paper 60.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/60

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-4504

———

UNITED STATES OF AMERICA

v.

JAJUAN HAMILTON,
                                                Appellant

———

On Appeal from the United States District Court
for the Western District of Pennsylvania

District Judge: Honorable Joy Flowers Conti

(D.C. No. 05-cr-00077)

Argued December 10, 2008

Before: McKee, Smith, and Roth, <u>Circuit Judges</u>.

(Filed: December 23, 2008)

Counsel for Appellant

KAREN S. GERLACH, ESQ.
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222-0000

Counsel for Appellee

REBECCA R. HAYWOOD, ESQ.
700 Grant Street
Suite 4000
Pittsburgh, PA 15222-0000

<u>OPINION</u>

McKee, Circuit Judge

JaJuan Hamilton appeals the 63-month sentence that was imposed following his guilty plea to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). His primary contention is that the district court improperly lengthened his term of imprisonment to increase his chances of getting into rehabilitative programs while in custody.[1] For the reasons set forth below, we agree with that contention and will therefore remand for resentencing.[2]

**I.**

Inasmuch as we write primarily for the parties who are familiar with this case, we need not set forth the factual or procedural background except to the extent that may be helpful to our brief discussion.

The following exchange occurred at sentencing as the district court diligently and thoroughly explained her consideration of the history and characteristics of the defendant, the nature and circumstances of the offense of conviction, and the other sentencing

---

[1] He also contends that the court unreasonably failed to grant a downward variance because the facts of his offense were not "typical" for the crime of felon-in-possession. Given the sentencing court's meticulous consideration of the various factors relevant to sentencing, *see* 18 U.S.C. § 3553(a), that contention can be dismissed without discussion.

[2] "We review criminal sentences for a 'violation of the law' [] which includes (i) matters of statutory interpretation over which we have plenary review [], as well as (ii) questions about reasonableness, []" *United States v. Manzella*, 475 F.3d 152, 156 (3d Cir. 2007). Hamilton objected at sentencing, thus preserving these issues for appeal.

2

factors contained in § 3553(a):

> THE COURT:  The Court notes too that you're requesting that you be recommended for some training, electric and plumbing along those lines, so you can work when you come out?
>
> MR. HAMILTON:  Yes, ma'am.
>
> THE COURT:  Is there any other kind of vocational training that - - if they don't have those, would you want to be eligible for whatever other class?
>
> MR. HAMILTON:  I want to learn as much as I can.
>
> THE COURT:  Okay.  I'll make it broader than that.  I am worried about the violence in your background.
>
> MR. HAMILTON:  Yes, ma'am.
>
> THE COURT:  I mean, from the time you were 14 years old you were in trouble.
>
> MR. HAMILTON:  Yes, ma'am.
>
> THE COURT:  The trouble that you get into frequently did involve guns. There were guns around for several of the instances.
>
> MR. HAMILTON:  This is the second incident.
>
> THE COURT:  The alcohol seems to be a problem for you as well.
>
> MR. HAMILTON:  Yes, ma'am.
>
> THE COURT: Drinking and that type of thing, I think that exacerbates the situation for you because whatever emotional problems you have are problematic as well.
>
> I'm going to recommend that you volunteer for what I call the 500-hour Residential Program.  It's mainly for people who have abuse problems, drug and alcohol, trying to help them to control the triggers in their life that cause them to act in inappropriate manners.
>
> * * *
>
> I think there could be some programs that might be beneficial for you along those lines.  I'm not sure that you'll qualify for time off with a 500-hour program because of the violence.  It's just something you would have to do because you want to do it.  It's going to help you when you come out.
>
> * * *
>
> Honestly, if you come out again and you repeat and you come back into either the state or the federal system, the sentence is just going to get longer and longer because of your criminal record and your background.
>
> It's a great tragedy.  It's a tragedy for your family.  It's a tragedy for you.  ***So I feel that when I'm sentencing you, I need to give you a longer sentence rather than a short sentence because I think you really need to***

3

***get the training.***

App. 67-70. (emphasis added).

The judge then sentenced Hamilton to 63 months, to run concurrently with the remainder of Hamilton's state sentence, a term of supervised release of three years, and a $100 special assessment. The court then explained each of the sentencing factors she had considered in great detail. After the court explained all of the reasons for the sentence, defense counsel objected "to the Court's statement that a lengthy sentence is necessary to provide [Hamilton] with . . . needed treatment and to take advantage of the programs." App. 83. Counsel pointed out that there was no evidence in the record regarding the time necessary to get into any particular program - or evidence that Hamilton could or would utilize the programs. *Id.* The court's response included the following:

> My understanding is that he – if you do the 500-hour, you have to have a term of imprisonment generally at least two to three years in length because by the time you get into the system and you want to qualify for it, there's a waiting list that you have to have a significant sentence in order to qualify for that.
> For training programs, there may also be some waiting lists. I can't assure that he will not be sitting for a few years before he gets the training.
> On the other hand, I think with that type of sentence, the likelihood that he will be able to participate in some program is greater. I'm not saying that anything is an assurance because I have no control over what happens in the Bureau of Prisons.
> I think a lengthy sentence within the guideline range is appropriate because of the history of violence, and I want to give him the maximum opportunity to obtain treatment in the system and also the training. If he doesn't take advantage of it or they can't provide it as timely, there's not much that this Court can do.
> I think that's a factor I have to look at in terms of determining the sentencing, the appropriate sentence; and given the individual's background

4

and taking all of the other factors into account, while I recognize that I can't give 100-percent assurances that he be able to be certified for a journeyman or reach some level of certification in a trade, at least he will have a sufficient length of time to attempt to take advantage of those programs and to receive some credible training so that when he comes out he can look for gainful employment and hopefully won't have to go into a training program where he may not have an income which could lead back to the problems that he has today.

Nothing here can be assured; but on balance I think when I look at all of the factors, I think it is an appropriate sentence.

App. 83-85. Defense counsel continued to object based upon the uncertainty that Hamilton would receive the anticipated rehabilitative treatment while in custody, and the AUSA responded as follows:

MS. HOUGHTON: If I may respond to that. Your Honor has made it very clear that was one factor; but Your Honor clearly outlined other factors here, and that is the nature of this offense wherein he had a loaded weapon and endangered an officer by refusal to obey the officer's instruction as a felon.

App. 86.

## II.

At the outset, we note that it is impossible to review the entire sentencing transcript without being impressed with the careful and individualized manner in which the district court attempted to fashion an appropriate sentence for Hamilton that would satisfy each and every sentencing consideration, including the sometimes opposing objectives of punishment and deterrence on the one hand and rehabilitation and the needs of the defendant on the other. Nevertheless, it is clear from our reading of the sentencing transcript that the court increased the term of imprisonment imposed in order to increase

5

Hamilton's chances of accessing rehabilitative programs while incarcerated. The court's intentions in doing so are nothing short of laudatory. Nevertheless, despite the court's good intentions, after the sentence was imposed we decided *United States v. Watson*, 482 F.3d 269 (3d Cir. 2007), and *United States v. Manzella*, 475 F.3d 152 (3d Cir. 2007). There we held that "a court can not . . . impose or lengthen a term of *imprisonment* for the purpose of providing correction and rehabilitation." *Watson*, 482 F.3d at 275 (emphasis in original).

Although the government now argues vociferously that the court did not increase Hamilton's term of imprisonment for rehabilitative purposes, we see no reason why we should ignore the court's own declaration to the contrary. As we noted above, the judge explicitly stated that "I need to give you a longer sentence rather than a short sentence because I think you really need to get the training." She also stated, "I think the longer term of imprisonment to provide you with some educational training in the 500-hour program will be of benefit." (App. 80) Moreover, as we have also just noted, in response to defense counsel's objection, the AUSA argued: "Your Honor has made it very clear that was one factor . . . ." Of course, neither the court nor the AUSA had the benefit of *Watson* or *Manzella* at the sentencing. However, that can not be said now and the government nevertheless insists on arguing that the sentencing judge either did not say what she meant, or that she did not mean to say what she clearly said, and what the AUSA at sentencing understood her to say. Accordingly, we are less than sympathetic to the

6

adversarial zeal that appears to be driving the government's objection to a remand, and we are convinced that a fair reading of the sentencing proceedings in view of *Manzella* and *Watson* require the remand we will order.

## III.

For the reasons set forth herein, we will remand for the district court for resentencing consistent with this opinion. At resentencing, the the district court can impose an appropriate sentence pursuant to the factors set forth in § 3553(a) without increasing any sentence of imprisonment for rehabilitative purposes. In doing so, we pause to note that we appreciate that the cases that dictate this result were decided after the court imposed this sentence and we reiterate our belief that the manner in which the court went about determining this sentence and the court's explanation of it were otherwise exemplary.