NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4675
_____

UNITED STATES OF AMERICA

v.

DAVID MATUSIEWICZ,

Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-08-cr-00069-001)
District Judge:   Honorable Gregory M. Sleet
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 15, 2010

Before:  AMBRO, FISHER and GARTH, *Circuit Judges*.

(Filed: November 23, 2010)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Appellant David Matusiewicz pled guilty to one count of bank fraud, in violation

of 18 U.S.C. § 1344, and one count of international parental kidnapping, in violation of

18 U.S.C. § 1204.  Matusiewicz argues that the District Court erred in imposing

enhancements for the amount of loss, the use of sophisticated means, the involvement of

a vulnerable victim, and an abuse of a position of private trust, all of which increased his total offense level. For the reasons stated below, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Matusiewicz is a father of three daughters and is divorced from their mother, Christine Belford. Prior to the divorce, Matusiewicz and his family lived at a home on Norva Drive (the "Norva Drive Property") in Delaware. Following the divorce, Belford moved out, and Matusiewicz lived at the Norva Drive Property with his children pursuant to an interim custody order of the Delaware Family Court. The custody arrangement provided that Matusiewicz and Belford would share joint custody.

On August 15, 2007, Matusiewicz forged Belford's signature to obtain a $249,000 home equity loan from Wilmington Savings Fund Society ("WSFS") secured by the Norva Drive Property. On August 21, 2007, the proceeds from the loan were transferred into Matusiewicz's WSFS checking account. Thereafter, the majority of the funds were wire transferred to an account in the Bank of New Zealand that Matusiewicz opened using the name "Thomas Matusiewicz." The government contacted the entity that maintained the account and the funds were returned to WSFS.

2

On August 26, 2007, Matusiewicz kidnapped his three daughters, L.M.1, L.M.2, and K.M., ages 5, 4, and 2 at the time.[1]  L.M.2 has autism.  Matusiewicz left Delaware in a motor home, telling Belford that he was taking the children on a vacation.  Instead, Matusiewicz left the country, drove through Central America, and eventually settled in Nicaragua.  Law enforcement located Matusiewicz and his daughters over nineteen months later.  Meanwhile, WSFS sold the Norva Drive Property when $129,707 was owed on the remaining mortgage debt.  WSFS also incurred various expenses to complete the sale.[2]

On September 3, 2009, Matusiewicz pled guilty in the United States District Court for the District of Delaware to bank fraud and international parental kidnapping.  The probation office prepared a Presentence Investigation Report ("PSR"), recommending seven enhancements to the base offense level.  The District Court imposed these enhancements and sentenced Matusiewicz to forty-eight months' imprisonment for the bank fraud charge and thirty-six months' imprisonment for the international parental kidnapping charge, to be served concurrently.  Matusiewicz filed a timely notice of appeal.

---

[1] Matusiewicz's daughters are referred herein by their initials only.

[2] Matusiewicz and the government disagree on the amount of these costs.

## II.

The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

In evaluating whether a district court erred in determining the applicable Sentencing Guidelines range, we "review factual findings relevant to the Guidelines for clear error and [] exercise plenary review over a district court's interpretation of the Guidelines." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). We review for plain error when a defendant does not timely object to a district court's determination of the applicable Guidelines range. *See* Fed. R. Crim. P. 52(b); *see also United States v. Hart*, 273 F.3d 363, 375 (3d Cir. 2001).

## III.

On appeal, Matusiewicz contends that the District Court erred in imposing four of the seven enhancements. First, he argues that the District Court improperly calculated the loss to WSFS and improperly included legal fees incurred under U.S.S.G. § 2B1.1(b)(1). Second, he challenges the District Court's imposition of the "sophisticated means" enhancement under U.S.S.G. § 2B.1(b)(9)(C). Third, Matusiewicz asserts that the District Court erred in finding that a "vulnerable victim" enhancement was proper under U.S.S.G. § 3A1.1(b)(1). Finally, he disputes the applicability of the enhancement for "abuse of a position of trust" pursuant to U.S.S.G. § 3B1.3. We address each argument in turn.

4

## A. Amount of Loss

Matusiewicz advances three arguments as to why the amount of loss was calculated incorrectly for purposes of U.S.S.G. § 2B1.1(b)(1). First, he asserts that the District Court erred in computing the amount WSFS recovered from the sale of the Norva Drive Property. Second, he argues that the District Court used an incorrect value for expenses incurred by WSFS in selling the Norva Drive Property. Third, he asserts that the District Court erred in finding that legal fees may be deducted from the amount WSFS recovered.

In his formal objections to the PSR, Matusiewicz argued that WSFS experienced a "zero loss" fraud because the $249,000 was returned. Because Matusiewicz did not object to the calculation of the individual items of loss before the District Court, we review for plain error. *See Hart*, 273 F.3d at 375. Matusiewicz maintains that the District Court should have calculated the amount WSFS recovered based on the balance of $123,062 owed on the property prior to the fraud, rather than the amount owed at the time of the sale. Under the Guidelines, loss is reduced by "the amount the victim has recovered at the time of sentencing from disposition of the collateral." U.S.S.G. § 2B1.1 cmt. n.3(E)(ii). The balance owed at the time of the fraud in August 2007 is not the relevant value. Rather, the pertinent amount is $129,707 – the balance owed on the mortgage when WSFS sold the Norva Drive Property. To obtain the amount WSFS recovered, the balance remaining at the time of the sale was subtracted from the sale price. Matusiewicz did not object to this calculation and "[a] conclusion in the presentence investigation report which goes unchallenged by the defendant is, of course,

5

a proper basis for sentence determination." *United States v. McDowell*, 888 F.2d 285, 290 n.1 (3d Cir. 1989). Therefore, the District Court did not commit an error, let alone a plain error, in this regard.

Matusiewicz's argument as to the calculation of legal fees incurred by WSFS fails for the same reason. He contends that the District Court should not have relied on the finding in the PSR that WSFS incurred $33,999 in expenses, but rather should have considered the Delaware Family Court's expense estimate. Because Matusiewicz did not previously raise this argument, the District Court's reliance on the PSR was an appropriate factual finding and did not constitute plain error. *See id.*; *see also United States v. Watson*, 482 F.3d 269, 274 (3d Cir. 2007).

Finally, Matusiewicz asserts that the District Court erred by subtracting legal fees that WSFS incurred in selling the Norva Drive Property because the court may consider "[t]he cost of repairs to damaged property" in estimating the loss, but the application note makes no mention of legal fees. U.S.S.G. § 2B1.1 cmt. n.3(C). This argument is not persuasive. The application note's list of factors that a district court should consider is non-exhaustive. *See id.* Moreover, litigation expenses incurred to secure the disposition of collateralized property may be subtracted from the sale price in determining the amount recovered. *See United States v. Sharma*, 190 F.3d 220, 229 (3d Cir. 2009). Here, the legal fees that WSFS paid were additional expenses incurred to sell the property following Matusiewicz's fraud. Therefore, the District Court did not commit plain error in finding that these fees should be subtracted from the amount WSFS recovered. *See Watson*, 482 F.3d at 274.

6

## B. Sophisticated Means

Second, Matusiewicz claims that the District Court erred in imposing the enhancement under U.S.S.G. § 2B1.1(b)(9)(c) because forging his ex-wife's signature to obtain a loan and transferring the money abroad does not rise to the level of "sophisticated means." Additionally, Matusiewicz notes that the government was able to recover the money easily. We exercise plenary review over the District Court's analysis of the Guidelines and apply clear error review to factual findings. *See Grier*, 475 F.3d at 570.

"'[S]ophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1(b)(9)(C) cmt. n.8(B). To that end, "[c]onduct such as hiding assets or transactions, or both, through the use of . . . offshore financial accounts also ordinarily indicates sophisticated means." *Id.* The District Court found that Matusiewicz used a fictitious name to gain access to a foreign account in the Bank of New Zealand, thereby further concealing his fraud. In addition, the District Court noted that the government expended significant time and resources to uncover the fraud. The District Court did not err in comparing the facts to an example explicitly mentioned in the application note. *See Grier*, 475 F.3d at 570. In addition, the fact that the government was eventually able to discover the fraud does not render Matusiewicz's actions any less sophisticated. *See United States v. Wayland*, 549 F.3d 526, 529 (7th Cir. 2008). Therefore, Matusiewicz's argument that the enhancement was improper is unfounded.

## C. Vulnerable Victim

Next, Matusiewicz claims that the enhancement for "vulnerable victim" under U.S.S.G. § 3A1.1(b)(1) was unwarranted for two reasons. First, Matusiewicz maintains that the application of the enhancement due to his children's age resulted in impermissible double counting given that the international parental kidnapping statute includes as an element that the child be a minor. Before the District Court, Matusiewicz did not raise this double counting argument. As such, we review for plain error. *See Watson*, 482 F.3d at 274. Second, Matusiewicz insists that the District Court did not make sufficient factual findings to justify imposing this enhancement.

A "'vulnerable victim' means a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable . . . and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b)(1) cmt. n.2. This enhancement is not applicable, however, "if the factor that makes the person a vulnerable victim is incorporated in the *offense guideline*." *Id.* (emphasis added). The District Court found that Matusiewicz's children were vulnerable victims due to their young age and the fact that L.M.2 is autistic. Neither of these factors – age or mental condition – are incorporated into the applicable offense guideline, U.S.S.G. § 2J1.2(a).

"[T]he Guidelines explicitly note when double counting is forbidden." *United States v. Fisher*, 502 F.3d 293, 309 (3d Cir. 2007) (internal citation omitted). The enhancement under U.S.S.G. § 3A1.1(b)(1) is improper only when the relevant factor is incorporated in the offense guideline. The fact that the age of the children is also

accounted for in the international parental kidnapping statute is, therefore, irrelevant. *See id.* Thus, the District Court did not err in this regard.

As to Matusiewicz's second contention, he argues that the District Court's factual findings do not justify a vulnerable victim enhancement. He asserts that the District Court imposed the enhancement solely on the basis of the familial bonds between him and his daughters. This "enhancement may be applied where: (1) the victim was particularly susceptible or vulnerable to the criminal conduct; (2) the defendant knew or should have known of this susceptibility or vulnerability; and (3) this vulnerability or susceptibility facilitated the defendant's crime in some manner." *United States v. Zats*, 298 F.3d 182, 186 (3d Cir. 2002).

The District Court properly applied the enhancement in this case. First, the District Court found that all of Matusiewicz's children were five years old or under during the kidnapping. Further, L.M.2 was also dealing with the challenges of autism. Second, Matusiewicz was aware of their vulnerability. Third, the District Court determined that the ages and mental condition of the children facilitated Matusiewicz's ability to commit the crime because their vulnerability prevented them from seeking help. The findings of the District Court were sufficient to justify the enhancement based on the age and mental condition of the children – factors that are specifically mentioned in the application note.

### D. Abuse of a Position of Private Trust

Finally, Matusiewicz disputes the application of the enhancement for an abuse of a position of private trust under U.S.S.G. § 3B1.3. Matusiewicz asserts that the District

9

Court applied this enhancement *solely* because he abused his position of trust as the parent of minor children. Consequently, Matusiewicz argues that this position of trust is a specific offense characteristic of the international parental kidnapping statute and may not form the basis of an enhancement under U.S.S.G. § 3B1.3. Second, Matusiewicz claims that the enhancement for an abuse of a position of private trust is inapplicable to familial relationships. Because these arguments implicate the District Court's interpretation of the Guidelines, our review is plenary. *See Grier*, 475 F.3d at 570.

At the outset, it is critical to note that the District Court's application of the enhancement was not based on the familial relationship between Matusiewicz and his children alone. Rather, the District Court found an abuse of a position of private trust as a result of Matusiewicz's status as a custodial parent pursuant to the order of the Delaware Family Court. In that capacity, as the District Court pointed out, "there necessarily must be some level of trust between the parents, at a very minimum, that they will adhere to the Family Court's orders and be forthright with one another regarding important decisions in the life and care of their children." (App. 38.)

Turning back to Matusiewicz's first argument, this position of private trust – as a parent given legal joint custody pursuant to a court order – is not a specific offense characteristic of the international parental kidnapping statute and may properly form the basis of the enhancement under U.S.S.G. § 3B1.3.

As to his second argument, Matusiewicz claims that an abuse of a position of private trust includes only business or professional relationships. "'Public or private trust' refers to a position of public or private trust characterized by professional or

managerial discretion . . . ." U.S.S.G. § 3B1.3 cmt. n.1. In *United States v. Pardo*, we held that "we are unwilling to draw a bright line limiting the abuse of trust increase to the employment relationship." 25 F.3d 1187, 1190-91 (3d Cir. 1994). To determine whether a position constitutes a position of trust, we consider "(1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority which the position vests in defendant vis-à-vis the object of the wrongful act; and (3) whether there has been reliance on the integrity of the person occupying the position." *Id.* at 1192. Reaffirming *Pardo*, we have determined that a defendant's use of his position in his church where he acted as a teacher, advisor, and counselor to defraud parishioners constituted an abuse of a position of private trust. *See United States v. Dullum*, 560 F.3d 133, 140 (3d Cir. 2009).

Applying the *Pardo* factors here, all three are satisfied. First, Matusiewicz's position as a custodial parent facilitated the kidnapping because he obtained control of the children from Belford under the pretext of taking them on a vacation. Had the Delaware Family Court not granted Matusiewicz partial custody, it would have been more difficult for him to kidnap the children undetected. Second, at the time of the kidnapping, the Delaware Family Court's order allowed him to exercise this control over the children. Third, there was adequate reliance on Matusiewicz's position as custodial parent because Belford and the Delaware Family Court trusted that he would comply with the court's orders. The District Court's factual findings were not clearly erroneous and its conclusion that Matusiewicz abused his position of trust as a custodial parent was proper. *See Grier*, 475 F.3d at 570.

11

## IV.

For the foregoing reasons, we will affirm the sentence of the District Court.