**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4064
_____

UNITED STATES OF AMERICA

v.

KAREEM B. LOUIS,
a/k/a Kareem Louis

Kareem Louis,
                    Appellant

_____

No. 13-4065
_____

UNITED STATES OF AMERICA

v.

RAHEEM D. LOUIS,
a/k/a Raheem Louis

Raheem Louis,
                    Appellant
_____

On Appeal from the District Court of the Virgin Islands, St. Croix
(D.C. Nos. 1-11-cr-00023-001 and 1-11-cr-00023-002)
District Judge: Hon. Wilma A. Lewis

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 8, 2014

Before: CHAGARES, JORDAN, and SHWARTZ, <u>Circuit Judges</u>

(Filed: January 8, 2015)

—————————

OPINION[*]

—————————

CHAGARES, Circuit Judge

Brothers Kareem and Raheem Louis ("Kareem" and "Raheem") appeal their convictions, and we have consolidated their cases. Kareem argues that the District Court erred in finding that he was competent to stand trial and in denying his motion for judgment of acquittal, that there was insufficient evidence to convict him, and that his sentence was excessive. Raheem argues that there was insufficient evidence to sustain his conviction, that the six-point enhancement to his advisory Sentencing Guidelines level based on the use of a firearm under United States Sentencing Guidelines ("U.S.S.G.") § 2B3.1(b)(2)(B) was excessive, and that the loss amount calculation was erroneous. For the reasons that follow, we will affirm.

I.

We write exclusively for the parties and therefore set forth only those facts that are necessary to our disposition. Kareem and Raheem were charged in connection with the theft at gunpoint of a 2010 blue Jeep Compass belonging to the victim at the Richmond Flea Market. Specifically, Kareem was charged with Carjacking in violation of 18 U.S.C. § 2119(1) (Count One), Using and Carrying a Firearm During a Crime of Violence in violation of 18 U.S.C. § 924(c) (Count Two), Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Three), Robbery in

—————————
[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

the First Degree in violation of 14 V.I.C. § 1862(2) (Count Four), Unauthorized Possession of a Firearm During a Violent Crime at the Richmond Flea Market in violation of 14 V.I.C. § 2253(a) (Count Five), Unauthorized Possession of a Firearm at Catherine's Rest Supermarket in violation of the same (Count Six), Unauthorized Use of a Vehicle in violation of 14 V.I.C. §§ 1382 and 11 (Count Seven), Possession of Stolen Property in violation of 14 V.I.C. §§ 2101(a) and 11 (Count Eight), and Assault in the Third Degree in violation of 14 V.I.C. § 297(2) (Count Nine). Raheem was charged with Carjacking (Count One), Robbery in the First Degree (Count Four), Unauthorized Use of a Vehicle (Count Seven), and Possession of Stolen Property (Count Eight).[1] The Government moved to sever their trials, see Kareem Supplemental Appendix ("Kareem App.") 1, and the District Court granted the motion.

At both trials, Eliza Schierloh, an employee at the flea market, testified that on the morning of August 19, 2011, two young men approached her, and one asked for a cigarette. She testified that the other man wore a dark wool jacket. Raheem Joint Appendix ("Raheem App.") 170; Kareem App. 177. She recalled that she saw the man who asked her for a cigarette frequently, and that he lived in a white house next door to the flea market. Raheem App. 169; Kareem App. 174-76. Virgin Islands Police Department Officers Rolando Huertas and Orlando Benitez, Jr. testified at Raheem's trial that Raheem and Kareem lived in that house. Raheem App. 272, 370. The victim testified at both trials that she went to the flea market on the morning of August 19, 2011

---

[1] Raheem's counsel numbers the counts differently, see Raheem Br. 3, apparently in error.

to make a donation, and, after unloading the items from her car, she walked around to the driver's side door, where two men approached her. Raheem App. 129-30; Kareem App. 129. One put a gun to her forehead and demanded her keys, which she gave him, and she then hid behind a dumpster while they drove off. Raheem App. 130-32; Kareem App. 129-34. She testified that her Apple iPhone was in the vehicle at the time. Raheem App. 136; Kareem App. 137. Schierloh testified that just before the vehicle peeled out of the driveway, she saw a man in a dark jacket walk around the corner of the building toward the loading dock. Raheem App. 172-73; Kareem App. 179. The victim told a worker at the flea market that two men had stolen her car. Raheem App. 133; Kareem App. 134. At both trials, the victim could not identify the defendants. Raheem App. 145; Kareem App. 157-58. At Kareem's trial, Schierloh testified that she did not see the person to whom she usually gave cigarettes in the courtroom. Kareem App. 176.

The defendants' younger brother testified that on the same morning, Kareem and Raheem – dressed in a black winter coat – came to his father's house in a small blue Jeep and drove him and another brother to Catherine's Rest Supermarket. Raheem App. 163-68; Kareem App. 223-28. While they were in the parking lot of Catherine's Rest Supermarket, the victim, driving by in a different car, saw the Jeep and called the police. Raheem App. 140-42; Kareem App. 154-55. The defendants' brother testified that they took the Jeep to the supermarket three times that morning, Raheem App. 209-13; Kareem App. 225-27, and on the third trip, police officers stopped the vehicle. Raheem App. 214; Kareem App. 227.

4

Kareem ran out of the vehicle and was arrested, Raheem App. 191, 226; Kareem App. 233, 291, while Raheem drove the brothers back to their father's house. Raheem App. 192; Kareem App. 228-29. Raheem's brother testified at Raheem's trial that, while driving back, Raheem told him he was sorry for getting his brothers "in this mess." Raheem App. 194. The police found a gun near a dumpster at the shopping center where they arrested Kareem, and a police officer testified that he saw Kareem remove something from his waist and hide behind the dumpster during the chase. Kareem App. 289, 291. The victim testified that the recovered weapon looked like the one the men had used when they stole her Jeep. Raheem App. 132. Raheem was arrested on September 1, 2011 at his house, where the police found an Apple iPhone, which he said belonged to "the owner of the vehicle which they stole, the blue Compass." Id. at 379. When the police found the vehicle, it contained a "black thick heavy coat . . . ." Id. at 93.

An officer testified at Kareem's trial that while Kareem was in the holding cell after his arrest, he "was having a tirade, an outburst, making a lot of different comments, and speaking openly about the robbery, and a vehicle . . . ." Kareem Joint Appendix ("Kareem Joint App.") 67. According to the officer's testimony, Kareem "said that they stole a Jeep." Id. at 69. The officer testified that Kareem "spoke about a gun freely. He said when the police start[ed] chasing him, he pull[ed] the gun from his waist, and thr[e]w it behind the dumpster." Id. at 70. The officer testified that he had never seen someone in custody act the way Kareem was acting, and that he "appears to not be normal." Id. at 71.

5

Kareem argued that he was not competent to stand trial, and the District Court conducted a competency hearing in which Kareem introduced testimony of expert Ramona Moss, Ph.D., who submitted a report saying that "it is questionable as to whether or not Mr. Louis" was competent, because "he does not have the capacity to appropriately participate in his defense, does not always have a reasonable understanding of all of the proceedings." Kareem Joint App. 43. The District Court noted that "[a]t the hearing . . . upon cross-examination, Dr. Moss clarified her statement, testifying that she believes [Kareem] is competent to stand trial." Id. at 47. The Government's psychological expert, Derek Spencer, M.D., found Kareem competent to stand trial. The District Court found that Kareem was competent, and his case proceeded to trial.

Kareem moved for Judgment of Acquittal at the close of the Government's case, arguing that the Government had not established that Kareem was at the Richmond Flea Market. The District Court denied the motion, and Kareem renewed it at the close of trial, when it was again denied.

After he was convicted at trial,[2] Kareem received concurrent sentences for Counts One, Four, Five, Six, and Seven, of which 180 months of imprisonment was the longest, see Kareem Joint App. 190, and that sentence was to run consecutively with the sentence for Count Two of 84 months of imprisonment, for a total of 264 months of imprisonment. Counts Eight and Nine were stayed pursuant to 14 V.I.C. § 104. Id. Kareem thus received a total sentence of 264 months. Id. at 190-91. Raheem received concurrent sentences for Counts One, Four, and Seven, the longest of which was 140 months, and

---

[2] Kareem was convicted of all counts except for Count Three.

the District Court stayed the sentence for Count Eight in accordance with 14 V.I.C. § 104. Raheem App. 10-11. Kareem and Raheem timely appealed.

## II.

The District Court of the Virgin Islands exercised jurisdiction pursuant to 48 U.S.C. § 1612(a) and (c) and 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

We review a District Court's factual decision that a defendant is competent to stand trial for clear error, United States v. Jones, 336 F.3d 245, 256 (3d Cir. 2003), reversing that determination only if it was "completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 399 F.3d 248, 254 (3d Cir. 2005) (quotation marks omitted).

With regard to the District Court's denial of a motion for judgment of acquittal based on insufficiency of the evidence, we exercise plenary review, and so, like the District Court, we must "examine the totality of the evidence, both direct and circumstantial, and interpret the evidence in the light most favorable to the government as the verdict winner." United States v. Starnes, 583 F.3d 196, 206 (3d Cir. 2009) (quotation marks omitted). In assessing both the District Court's denial of Kareem's motion for judgment of acquittal and both appellants' challenges to the sufficiency of the evidence, we uphold the jury's verdict if "there is substantial evidence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." Id. (quotation marks omitted). As we have emphasized, "[t]he burden on a

7

defendant who raises a challenge to the sufficiency of the evidence is extremely high." United States v. Iglesias, 535 F.3d 150, 155 (3d Cir. 2008) (quotation marks omitted).

We review the District Court's imposition of consecutive sentences for abuse of discretion. See Gall v. United States, 552 U.S. 38, 46 (2007). Moreover, where a defendant does not object to a sentence at the time of sentencing, we review for plain error, whereby we may grant relief only if we conclude that: (1) there was an error, (2) the error was clear or obvious, and (3) the error affected the appellant's substantial rights. United States v. Stinson, 734 F.3d 180, 184 (3d Cir. 2013). If those three conditions are met, we then have discretion to remedy the error, and we exercise this discretion only if the error "'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting Puckett v. United States, 556 U.S. 129, 135 (2009)) (alteration omitted); see also United States v. Watson, 482 F.3d 269, 274 (3d Cir. 2007). With respect to the Raheem's argument that the District Court erred in adding a six level enhancement to his advisory Guidelines calculation under U.S.S.G. § 2B3.1(b)(2)(B), we review findings of fact relevant to that determination for clear error, and we exercise plenary review over the District Court's interpretation of the Guidelines. United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007). We review the District Court's factual findings as to loss amount for clear error. United States v. Vitillo, 490 F.3d 314, 330 (3d Cir. 2007).

III.

A.

We consider first Kareem's contention that the District Court erred in determining he was competent to stand trial. A defendant is competent to stand trial if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and if he has a "rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960); see also Hull v. Kyler, 190 F.3d 88, 105 (3d Cir. 1999). The Government has the burden of proving a defendant's competency by a preponderance of the evidence at a competency hearing. United States v. Velasquez, 885 F.2d 1076, 1089 (3d Cir. 1989). In light of both Dr. Spencer's and Dr. Moss's testimony at the hearing here, the District Court's determination that Kareem was competent was not "completely devoid of a credible evidentiary basis," nor did it lack a "rational relationship to the supporting data." Interfaith Cmty. Org., 399 F.3d at 254.

B.

We turn to Kareem's argument that the evidence was insufficient to sustain his conviction and so the District Court erred in denying his motion for judgment as a matter of law. Kareem bases his insufficiency argument on the fact that though the victim and Schierloh testified that they had seen two men face-to-face on the morning of August 19, 2011, neither person identified Kareem as one of the men they saw. Kareem Br. 13. He argues further that the Government failed to show that the gun recovered at Catherine's Rest Supermarket was the same gun used in the robbery, and that the Government failed

9

to show that Kareem had a weapon at the Richmond Flea Market.  Id. at 13-14.  Kareem thus argues that the evidence was insufficient to show that he was at the flea market, that he had a gun, or that he stole the victim's car.

The Government counters that in light of the testimony of Schierloh, the victim, Kareem's brother, and Kareem's own confession, viewing all evidence in the light most favorable to the Government, there is substantial evidence from which a rational finder of fact could find each element beyond a reasonable doubt.  We agree.  Particularly in light of Kareem's confession that he stole the vehicle and had a gun while at Catherine's Rest Supermarket, there was sufficient evidence to sustain Kareem's conviction, and the District Court properly denied Kareem's motion for a judgment of acquittal.

## C.

With respect to Raheem's challenge to the sufficiency of the evidence, Raheem argues first that there was insufficient evidence to place him at the flea market, and that even if the evidence was sufficient to show that he was there, it was insufficient to show that he aided and abetted a carjacking and robbery.

We agree with the District Court that there was sufficient evidence to sustain Raheem's conviction.  As discussed above, the Government introduced evidence that two men, one of whom Schierloh recognized as living in the white house next door to the flea market, asked Schierloh for a cigarette on the morning of the incident, and that the other man was wearing a dark coat.  Just before the stolen vehicle left the parking lot, Schierloh reported seeing a man in a dark jacket in the parking lot again.  The victim testified that two men robbed her, and that one was wearing a dark jacket.  The defendants' brother

10

testified that Kareem and Raheem picked him and another brother up in a blue Jeep, made several trips to a grocery store, and then fled when the police confronted them. Moreover, a police officer testified that when Raheem was arrested, Raheem said that the iPhone the police recovered belonged to the owner of the vehicle they stole.

From this evidence, a rational finder of fact could conclude beyond a reasonable doubt that Raheem was with Kareem at the flea market when the victim's vehicle was stolen. With regard to Raheem's argument that there was insufficient evidence to show that he aided and abetted a carjacking and a robbery, we note that in order to show aiding and abetting, the Government must introduce sufficient evidence to prove beyond a reasonable doubt that "the underlying crime occurred," that "the defendant knew of the crime," and that he "had the specific intent of facilitating" it. United States v. Gordon, 290 F.3d 539, 547 (3d Cir. 2002) (quotation markets omitted). To prove the latter element, "the defendant must participate in the criminal enterprise. Neither mere presence at the scene of the crime nor mere knowledge of the crime is sufficient to support a conviction," instead, "the Government must prove the defendant associated himself with the venture and sought by his actions to make it succeed." United States v. Mercado, 610 F.3d 841, 846 (3d Cir. 2010) (quotation marks and citations omitted). Direct evidence is not necessary: "An aiding and abetting conviction can be supported solely with circumstantial evidence as long as there is a logical and convincing connection between the facts established and the conclusion inferred." Id. (quotation marks omitted).

11

The specific intent required under the federal carjacking statute, 18 U.S.C. § 2119, is "satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car . . . ." Holloway v. United States, 526 U.S. 1, 12 (1999). In order to prove aiding and abetting for robbery under 14 V.I.C. § 1862(2), the Government was required to prove that Raheem acted with the specific intent to permanently deprive a rightful owner of his property. See Gov't of V.I. v. Carmona, 422 F.2d 95, 98 (3d Cir. 1970).

The evidence described above was sufficient to allow a rational finder of fact to conclude beyond a reasonable doubt that the carjacking and robbery occurred, that Raheem knew of the crimes, and that he had the specific intent to facilitate them. There was evidence from which the jury could have inferred that the brothers left a house they shared, walked up to the victim together, Kareem held a gun to her head, both brothers then drove off in the car, and Raheem drove the vehicle around that day and for several days after, until he was arrested. There is a "logical and convincing connection" between this circumstantial evidence and the conclusion that Raheem had the specific intent to deprive the victim of the vehicle permanently and that at the moment they took the car, Raheem shared Kareem's intent to seriously harm or kill her if she did not comply. Accordingly, Raheem's insufficiency argument also fails.

D.

We next consider Kareem's argument that the District Court imposed an excessive sentence on him. Kareem argues that the District Court erred in imposing consecutive

12

sentences for Count Two and Count Five, and that it "should have used its discretion to sentence [him] to concurrent sentences." Kareem Br. 15. He contends that the District Court violated his Eighth Amendment rights by imposing consecutive sentences. Because Kareem did not object at trial, we review for plain error. Under Count Two, Kareem was convicted of using and carrying a firearm during and in relation to a crime of violence pursuant to 18 U.S.C. § 924(c)(1)(A)(ii). In Count Five, he was convicted of unauthorized possession of a firearm during a violent crime at the flea market in violation of 14 V.I.C. § 2253(a). A conviction under 18 U.S.C. § 924(c)(1)(A)(ii) results in a mandatory minimum term of seven years, and section 924(c)(1)(D)(ii) of the same title provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person . . . ." See also United States v. Abbott, 574 F.3d 203, 211 n.5 (3d Cir. 2009) (18 U.S.C. § 924(c) contains a "mandate that § 924(c) sentences must run consecutively to all other sentences." (emphasis in original)). In light of this clear statutory direction, the District Court did not commit plain error by imposing consecutive sentences. This case is not the "extraordinary case" in which a sentence for a term of years violates the Eighth Amendment. United States v. Walker, 473 F.3d 71, 79 (3d Cir. 2007).

Kareem argues without elaboration that he "was not awarded credits for the 24 months that he had already served." Kareem Br. 15. The Government does not respond to this argument, but we cannot grant Kareem relief on this basis, because it is the Bureau of Prisons, and not the District Court, that determines the credit to which Kareem is entitled under 18 U.S.C. § 3585. See United States v. Wilson, 503 U.S. 329, 334 (1992).

13

We turn to Raheem's argument that he should not have received a six-level enhancement under U.S.S.G. § 2B3.1(b)(2)(B). Raheem withdrew his objection to this enhancement at sentencing, <u>see</u> Raheem App. 563, and so we review for clear error. Section 2B3.1(b)(2)(B) provides for a six level enhancement if "a firearm was otherwise used," where "otherwise used" means that "the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." <u>See</u> U.S.S.G. § 2B3.1(b)(2)(B) cmt. n. 1; § 1B1.1 Commentary, Application Note 1(I). The District Court imposed this enhancement because Kareem held the gun to the victim's head while stealing her car.

Under U.S.S.G. § 1B1.2, a defendant may receive an enhancement for any behavior of co-defendants that is "reasonably foreseeable . . . in the furtherance of the jointly undertaken criminal activity." Raheem was convicted of carjacking, and the District Court was empowered to consider the evidence suggesting that it was reasonably foreseeable to Raheem that Kareem, his brother and housemate, would carry a gun to steal the vehicle and that he would use it to threaten the victim while carrying out the crime. We find no error with the application of this enhancement.

F.

Finally, we address Raheem's contention that the District Court erred in calculating the loss amount by using the Kelley Blue Book value of the Jeep Compass,

14

which was introduced in the pre-sentence investigation report but not at trial. We review the District Court's factual findings as to loss amount for clear error. "The Government bears the burden of establishing, by a preponderance of the evidence, the amount of the loss for purposes of the sentencing enhancement." United States v. Jimenez, 513 F.3d 62, 86 (3d Cir. 2008). Once the Government makes a prima facie case for the loss amount, though, "the burden of production shifts to the defendant to provide evidence that the Government's evidence is incomplete or inaccurate." Id.

Here, the victim testified that the 2010 Jeep Compass had been new when she bought it, and the crime took place in 2011. The Government contends that this evidence was sufficient to meet its burden of making a prima facie case as to value. In the pre-sentence investigation report, the U.S. Probation Office reported the Kelley Blue Book value of the vehicle as $16,148. Raheem objected to the use of the Kelley Blue Book at the time of sentencing, not on the ground that the Government had failed to prove the value, but on the ground that "[t]he Blue Book offers several values depending on the condition of the vehicle, and the probation officer had to make a determination as to the condition of the vehicle in order to rely upon the value given." Raheem App. 647. The District Court rejected this argument, reasoning that "the Probation Office used the lowest value provided by Kelley Blue Book in drafting the presentence investigation report," and so, if there was any deviation from the actual value of the victim's car, it was that the value the District Court used was too low. Id. at 565. Raheem had the opportunity to object to the loss amount, and the District Court rejected his objection. The record showed that the defendants had stolen a one-year-old Jeep Compass, and it

15

was not error (much less clear error) for the District Court to find that the value of the vehicle was more than $10,000.

IV.

For the foregoing reasons, we will affirm the judgments of the District Court.