NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2454
_____


UNITED STATES OF AMERICA

v.

MARK GREEN, a/k/a Mark Andre Green, a/k/a Anthony Covington,
a/k/a Tracy Green, a/k/a Mark Wallace, a/k/a Andre Green,
a/k/a James Smith, a/k/a Adrian Mercier, a/k/a Mark Brown

Mark Green,
                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-08-cr-00044-001)
District Judge: Hon. Juan R. Sánchez
_____

Submitted Under Third Circuit LAR 34.1(a)
September 19, 2012
_____

Before: AMBRO, GREENAWAY, JR., and TASHIMA,[*] Circuit Judges

(Opinion filed: March 19, 2013)

_____

[*] Hon. A. Wallace Tashima, Senior Judge, United States Court of Appeals for the Ninth
Circuit, sitting by designation.

1

_____

OPINION
_____

TASHIMA, Circuit Judge

After a three-day jury trial in which he represented himself, Defendant-Appellant Mark Green was convicted of one count of access device fraud conspiracy, two counts of unauthorized use of an access device, and one count of aggravated identity theft. The District Court sentenced Green to 139 months' imprisonment and ordered the forfeiture of Green's Mercedes-Benz and $9,000. Green appeals his conviction and sentence on twelve distinct grounds. The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1), and we will affirm the District Court.

## I. BACKGROUND

In 2007, the United States Secret Service began an identity theft investigation into the purchase of vehicles using stolen identities and the use of those identities to obtain unauthorized credit cards. Investigators learned that a Mercedes-Benz received over $9,000 in repairs charged to two fraudulent credit cards at a Fort Washington dealership. On August 2, 2007, a detective of the Upper Dublin Township Police Department seized and searched the car, which belonged to Mark Green ("Green"), and obtained a warrant for his arrest.

On November 16, 2007, Green voluntarily went to the Upper Dublin Township

Police Department to speak with a detective and a Secret Service agent. He admitted that he had applied for and used fraudulent credit cards to pay for repairs to his car. He also told the officers that he became involved in identity theft in January 2007, and that he was the "boss" of an organization involved in such activities. In December 2007, state police executed a search warrant on Green's apartment.

Green was arrested on December 26, 2007. The government filed an indictment on January 24, 2008, alleging that Green committed: (1) one count of access device fraud conspiracy, in violation of 18 U.S.C. § 1029(b)(2); (2) two counts of unauthorized use of an access device, in violation of 18 U.S.C. § 1029(a)(2); and (3) two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

On March 18, 2008, the government filed a motion for a continuance of the trial date pursuant to 18 U.S.C. § 3161(h)(7)(A),[1] explaining that the government and Green were engaged in plea negotiations, and stating that Green's attorney joined the motion. The District Court granted the motion on March 20, 2008, specifically finding that the parties' plea negotiations justified an "ends of justice" continuance under § 3161(h)(7)(A). The District Court set a new trial date of June 30, 2008. On May 2, 2008, Green's attorney filed a motion for pretrial release. Green was arraigned on May 8, 2008.

---

[1] At the time the government requested its continuance, this provision of the Speedy Trial Act was codified at 18 U.S.C. § 3161(h)(8)(A). For ease of reference, we refer to this provision as § 3161(h)(7)(A).

On June 24, 2008, six days before trial was set to begin, Green's attorney filed an unopposed motion for a continuance pursuant to § 3161(h)(7)(A), explaining that he needed additional time to prepare for trial. On June 25, 2008, the District Court granted the continuance without specifying a new trial date. The court stated that the interests of justice were served by granting counsel time to prepare for trial and that trial would be continued "until a date to be set upon consultation with the parties."

During a bail hearing held on August 15, 2008, the court stated that the first available trial date was February 2, 2009, and the parties agreed to that date. The District Court denied Green's bail motion. Nothing in the District Court record after August 15 indicates why the court did not file an order scheduling trial for February 2; no further mention is made of the February 2 date and the next filing on the District Court docket is dated February 27, 2009 – the day that Green's attorney moved to withdraw as counsel, citing an irreconcilable conflict of interest.

On March 9, 2009, the District Court held a hearing on defense counsel's motion to withdraw. There, Green complained that his attorney agreed to continuances without authorization, that Green had difficulty getting in touch with the attorney, and that the attorney failed to file a number of motions and an appeal that Green requested. After discussing these complaints with Green and his attorney in some detail, the court explained to Green that, in its view, the attorney was doing everything he could competently to represent Green. The court gave Green the choice of representing himself

or working things out with his attorney, explaining that Green's complaints did not amount to irreconcilable differences and the court would not appoint a replacement attorney.[2]

On June 26, 2009, Green's attorney filed a second motion for pretrial release. On July 15, 2009, the District Court held a telephone status conference with the parties and filed an order setting the trial date for October 26, 2009. The order was written on a standardized § 3161(h)(7)(A) continuance form. On July 23, 2009, the District Court held a hearing on the second bail motion. That same day, Green wrote a handwritten letter to the District Court, asserting his right to a speedy trial and claiming that the continuances requested by his attorney were against his wishes.

On July 27, 2009, the District Court denied Green's second bail motion. Green appealed the denial of his motion to this Court, and we affirmed the District Court on September 15, 2009. On October 23, 2009, three days before the scheduled trial date, the District Court ordered the trial continued to November 2, 2009. Although the District Court used a § 3161(h)(7)(A) continuance form, it did not specify any reason for the continuance on the form.

On October 30, 2009, the District Court held a hearing on the parties' pretrial motions. The court first considered Green's motion to suppress the statements he made to

---

[2]    The court also stated that it would take the motion to withdraw under advisement and asked Green's attorney to advise the court in two weeks as to the status of the motion. On April 21, 2009, the District Court denied the motion to withdraw, as moot.

the police on November 16, 2007, on the basis that his *Miranda* waiver was not voluntary and intelligent. The government called the two officers who spoke with Green on November 16: the Upper Dublin Township police detective and the Secret Service agent. The detective testified that Green voluntarily came in to speak with the police in November, that the detective read Green his rights from a *Miranda* form, and that Green confirmed that he understood his rights verbally and in writing. Green signed his name, but did not fill out the portion of the *Miranda* form indicating the time that he signed it, although he did date the form.

The Secret Service agent testified that she remembered Green being read his rights and that Green acknowledged them and signed a *Miranda* waiver form. She did not know why the portion of the form specifying the time of the waiver was blank. The meeting lasted approximately two to two and a half hours, and Green was calm and eager to talk. The agent took notes during the meeting of what was said. Before the meeting, she had informed Green that he would be arrested after speaking to the police, because there was an open warrant for his arrest.

After the suppression hearing, Green's attorney told the court that Green wished to proceed *pro se*. The court asked Green about his experience and familiarity with the rules of evidence and objections, and it informed Green that self-representation would be dangerous and foolish. Green said that he felt he could present the case in the way that he thought it should be presented. The court then asked the government to describe the

counts in the indictment and the penalties for those offenses. The government listed the maximum sentences for the five counts in the indictment and said that it believed the total offense level for purposes of sentencing was six, although the government was not yet aware of Green's criminal history score. The court explained to Green that his offense level would be six for purposes of sentencing, but that Green could face a sentence higher than the Guideline range if circumstances justified an upward departure.

The court then asked Green if he was making the decision to represent himself freely; Green answered in the affirmative. The court warned Green that once he gave up his right to representation, it would be binding for all purposes and he would not be appointed a lawyer through sentencing. The court then stated that it would give Green the weekend to think about his decision and that the court would appoint his then-attorney as standby counsel at trial, if Green did not change his mind. The court then denied Green's *pro se* oral motions for dismissal of the case, based on an allegedly defective indictment and a speedy trial violation.

On November 2, 2009, the District Court denied Green's motion to suppress his police statements. The court found that the testimony at the suppression hearing demonstrated that Green voluntarily agreed to speak with law enforcement officers, was advised of his *Miranda* rights, and signed the waiver form. Accordingly, the District Court found that Green's waiver was knowing and voluntary.

Trial commenced on November 2, 2009. Green informed the court that he had

decided to proceed *pro se* with his attorney as standby counsel. The court stated that it would permit Green to represent himself but that the court was neither pleased nor thought the decision wise. Green also filed as his own a motion drafted by his standby counsel to suppress the physical evidence seized from his home in December 2007. The court orally denied the motion. In a later-filed order, the court explained that the affidavit supporting the search warrant for Green's house provided probable cause because circumstantial evidence indicated a fair probability that Green's house contained evidence of a crime.

After the court denied Green's suppression motion on November 2, jury selection commenced. The court questioned prospective jurors at a sidebar with Green's standby counsel and the government attorney present. The court stated that it did not want Green at the sidebar and that his standby counsel could discuss what occurred at the sidebar with Green. Before the jury was seated, the court asked the prosecution and Green whether they had any other questions to pose of prospective jurors. After the jury was seated, Green complained that his first challenge had been to juror number nine and that his strike was not reflected in the jury's final composition. The prosecutor, Green's standby counsel, and the District Judge reviewed their notes and all agreed that juror nine was not among Green's original strikes. The court determined that Green's first strike had been to juror twenty-seven and that Green's objection to the jury's final composition was noted and overruled.

A three-day trial followed. The government called as witnesses the detective and agent to whom Green made admissions, as well as a Discover Card financial investigator, a Mercedes-Benz of Fort Washington employee, and one of the victims of Green's alleged fraud. During deliberations, the jury requested that seven defense exhibits be sent to the jury room. Green objected to the sending of two exhibits – statements written by the Secret Service agent – because they contained additional material not testified to at trial.

The government objected to the sending of a third exhibit – an affidavit written by the Secret Service agent – because it contained allegations of criminal activity that went beyond the charges and could prejudice Green. Green advocated giving the agent's affidavit to the jury; his standby counsel disagreed. The court decided not to send the affidavit to the jury. Green also argued that an exhibit containing the state criminal complaint against him should be sent to the jury because all of the charges in it were incorporated into the federal indictment. The court decided that the complaint would not go to the jury either. Ultimately, the court did not send any of the requested exhibits to the jury and, instead, instructed it to rely on their memories of testimony regarding those exhibits.

The jury returned guilty verdicts on the single count of access device fraud conspiracy, on both counts of unauthorized use of an access device, and on one of the two counts of aggravated identity theft.

After trial, at Green's request, the District Court appointed a new attorney to represent Green at sentencing. On April 15, 2010, Green filed an Omnibus Post-Trial Motion challenging the court's jurisdiction over the indictment, alleging prosecutorial misconduct, and claiming a violation of the Speedy Trial Act. The motion also raised a sufficiency of the evidence challenge, a Confrontation Clause claim, a claim that Green was denied his Sixth Amendment right of self-representation, and a claim that the court erred in failing to determine whether good cause existed to appoint replacement counsel at trial.[3]

The defense also submitted the affidavit of an attorney who claimed that he represented Green in August 2007 and informed the detective, before the detective's November 16 meeting with Green, that he represented Green. Based on this affidavit, Green argued that his statements to the police should have been suppressed because the police knew that he was represented and questioned him without his attorney present. In response, the government admitted that Green told the officers before his interview that he was represented by the attorney. The government asserted, however, that when the U.S. Attorney's Office called the attorney, he stated that he represented Green only in a different matter then before the Court of Common Pleas in Philadelphia. The government did not include any affidavits or evidence supporting its contention.

The court denied Green's post-trial motion on May 16, 2011, after considering

---

[3]    The motion did *not* raise a Sixth Amendment speedy trial claim.

-10-

Green's Speedy Trial Act claim in some detail. The court first noted that fifty-four non-excludable days passed between the December 26, 2007, indictment and the parties' first request for a continuance on March 18, 2008. The court then concluded that all other days until the trial date on November 2, 2009, were excludable under the Speedy Trial Act based on the March 18, 2008, continuance request, the June 23, 2008, continuance request, and the government's oral request for a continuance in October 2009. The court also explained why it granted a trial continuance from October 26 to November 2, 2009: the one-week delay was necessary under § 3161(h)(3)(A) because the government thought – until a few days before trial – that Green was planning to plead guilty, and so a government witness was unavailable on October 26. The court concluded that sixty-three non-excludable days[4] elapsed between the filing of the indictment and Green's trial, resulting in no Speedy Trial Act violation.

Green's presentence investigation report ("PSR") found an offense level of 22 and a criminal history category of IV. Following a sentencing hearing, the District Court granted the government's motion for an upward departure to a criminal history category of V and sentenced Green to 139 months' imprisonment. Following a forfeiture hearing, the District Court ordered the forfeiture of Green's Mercedes-Benz and $9,000. The court found that the government had met its burden of showing, by a preponderance of the

---

[4]     The record does not disclose how the District Court reached its conclusion that sixty-three non-excludable days elapsed prior to trial. The only non-excludable delay occurred between the indictment and the filing of the first continuance on March 18, 2008 – a delay of fifty-four days.

evidence, that the car constituted the proceeds of and was used in the commission of the offenses of conspiracy to commit access device fraud, access device fraud, and aggravated identity theft, and, as such, the car was properly subject to forfeiture under 18 U.S.C. § 982.  Green timely appealed his conviction and sentence.

## II.    DISCUSSION

*A.    Speedy Trial Act Claim*

Green argues that the delay between his January 24, 2008, indictment and November 2, 2009, trial violated the Speedy Trial Act, which provides that a federal criminal trial shall commence within seventy non-excludable days of the filing date of a federal indictment or from the date the defendant appeared before a judicial officer, whichever is later.  18 U.S.C. § 3161(c)(1).  Green first appeared before a judicial officer on December 26, 2007, the date of his arrest, and the indictment in his case was filed on January 24, 2008.  Under § 3161(c)(1), the latter of the two dates marks the start of the Speedy Trial Act clock.

Section 3161(h) enumerates periods of delay that are excluded in computing the seventy-day time limit.[5]  The "ends of justice" exception excludes:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such

---

[5]    Exceptions include delay resulting from pretrial motions, measured from the filing of the motion to the conclusion of the hearing on the motion, § 3161(h)(1)(D), and any period due to the absence or unavailability of the defendant or an essential witness, § 3161(h)(3)(A).

continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). Section 3161(h)(7)(B) provides a non-exhaustive list of the factors a judge must consider in determining whether to grant a § 3161(h)(7)(A) continuance.

Green argues that the delay between his indictment and trial violated the Speedy Trial Act because: (1) delay resulting from continuances requested or acquiesced to by his attorney without Green's approval should not be excluded; (2) the District Court erred in granting an open-ended continuance on June 25, 2008, and delay resulting from that continuance should not be excluded; and (3) those continuances for which the District Court did not provide "ends of justice" reasons on the record were not excludable because of lack of justification.

We exercise plenary review over the District Court's interpretation of the Speedy Trial Act and review its factual determinations for clear error. *United States v. Rivera Constr. Co.*, 863 F.2d 293, 295 n.3 (3d Cir. 1988). When the District Court grants a continuance after a proper application of the Speedy Trial Act to established facts, we apply an abuse of discretion standard of review. *Id.*

*1.     Continuances Acquiesced to or Requested by Green's Attorney*

Green's attorney agreed to the March 2008 continuance requested by the government and asked for the June 2008 continuance in order to prepare himself for

-13-

Green's trial. Green contends that he did not agree to these continuances. The Speedy Trial Act specifically provides that an "ends of justice" continuance can be granted by a judge "at the request of the defendant or his counsel." § 3161(h)(7)(A). Therefore, the attorney's requests for and agreement to continuances exclude them from the days counted towards the Speedy Trial Act clock. *See New York v. Hill*, 528 U.S. 110, 115 (2000).

### 2. *June 2008 Open-Ended Continuance*

We have cautioned district courts against using open-ended continuances as a general matter, but such continuances granted under the "ends of justice" exception are not prohibited as long as they are reasonable in length. *United States v. Lattany*, 982 F.2d 866, 868, 876 n.14 (3d Cir. 1992). Although the District Court's decision to grant an open-ended continuance in this case resulted in a delay of sixteen months and left it to the parties to consult with the Court about a new trial date, it was not an abuse of discretion because the District Court was aware that Green's attorney needed more time to prepare and the Court noted that the parties were engaged in settlement negotiations.

### 3. *"Ends of Justice" Continuances Without Reasons Provided*

Green also asserts that two of the District Court's orders granting "ends of justice" continuances did not include the reasons for those continuances on the record, as required by § 3161(h)(7)(A). Although the District Court is required to set out its reasons for granting an "ends of justice" continuance on the record in order for the delay to be

excluded under the Speedy Trial Act, *Rivera Constr. Co.*, 863 F.2d at 296, it need not articulate its reasoning at the time it grants an "ends of justice" continuance, so long as it indicates the statutory basis of the continuance at that time, *Lattany*, 982 F.2d at 878-79. Subsequent explanation on the record of the court's earlier justification for granting the continuance is sufficient. *United States v. Fields*, 39 F.3d 439, 443 (3d Cir. 1994). At the very least, such reasons must be provided by the time the court rules on the defendant's motion to dismiss the indictment for violations of the Speedy Trial Act. *Zedner v. United States*, 547 U.S. 489, 506-07 (2006).

The first order that Green contends violated the requirement that reasons be stated on the record is the District Court's order of July 15, 2009, setting trial for October 26, 2009. Although this order was written on a preprinted Speedy Trial Act form, it is not a Speedy Trial Act continuance; it is merely a scheduling order setting a trial date. The June 2008 open-ended continuance was ongoing at that time, and the order was an attempt to end to it. Section 3161(h)(7)(A)'s record requirement is therefore inapplicable.

The second order that Green argues violated the record requirement in § 3161(h)(7)(A) is the District Court's order of October 23, 2009, continuing trial from October 26 to November 2. We agree that the October 23 continuance did not satisfy the statutory prerequisites and the week-long delay between the old and new trial dates should not be excluded in calculating the Speedy Trial Act deadline. There was, however, no Speedy Trial Act violation. Only fifty-four non-excludable days elapsed

between Green's indictment and the first Speedy Trial Act continuance in his case in March 2008.[6]  Because valid, reasonable continuances were in place until October 26, 2009, only seven more days of non-excludable delay elapsed prior to the commencement of trial on November 2, 2009.  The total non-excludable delay was therefore sixty-one days – fewer than the seventy days allowed by statute.  We therefore affirm the District Court's denial of Green's Speedy Trial Act claim.

B.      *Sixth Amendment Speedy Trial Claim*

We review de novo a District Court's legal conclusion regarding a defendant's claim that his constitutional right to a speedy trial was violated, and we review for clear error the factual findings underpinning that conclusion.  *United States v. Battis*, 589 F.3d 673, 677 (3d Cir. 2009).  Where a claim of error is forfeited because it was not timely raised in District Court, plain error review applies.  Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 731-32 (1993); *see also United States v. Cotton*, 535 U.S. 625, 631 (2002).

Green did not argue before the District Court that his constitutional right to a speedy trial was violated, although he did argue – both in an oral motion to dismiss and in his post-verdict motion – that the Speedy Trial Act had been violated.  Although he asserted his constitutional right in a letter to the court and mentioned his speedy trial rights in court on one occasion, neither communication indicated that he thought that right

---

[6]      *See supra* note 4.

-16-

had been violated. Accordingly, the District Court had no reason to address a Sixth Amendment speedy trial claim in its order denying Green's post-verdict motion. We therefore review Green's Sixth Amendment speedy trial claim for plain error. In assessing whether there has been a violation of Green's Sixth Amendment right to a speedy trial, we consider the four factors set out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972),[7] together with other relevant circumstances in weighing the prosecution's conduct against that of the defense. *Battis*, 589 F.3d at 678.

### 1. Length of Delay

The speedy trial clock, for Sixth Amendment purposes, begins to run from either the date of arrest or indictment, whichever is earlier, and ends with the commencement of trial. *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993). Green was arrested prior to his indictment, and accordingly his pretrial delay amounted to twenty-two months, from his arrest on December 26, 2007, to his trial on November 2, 2009.

---

[7]    The four *Barker* factors are: (1) the length of the delay; (2) the reason for the delay; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice suffered by the defendant. *Barker*, 407 U.S. at 530. If the defendant's right to a speedy trial has been violated, the indictment must be dismissed. *Id.* at 536.

*2.     Reason for Delay*

We ask whether the government or the defendant is more to blame for the delay. *Vermont v. Brillon*, 129 S. Ct. 1283, 1290 (2009).  Delay caused by a defendant's counsel is charged against the defendant.  *Id.* at 1290-91; *see also Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002).

Green's attorney moved for the continuance granted by the District Court between June 2008 and October 2009.  Accordingly, all of that delay is attributable to Green rather than the government.  His attorney also acquiesced in the government's March 2008 request for a continuance.  Any negligence in failing to insist that the District Court adhere to the court's oral commitment to set a February 2009 trial date is attributable to both Green's attorney and the government.  *See Brillon*, 129 S. Ct. at 1291.  There is also no evidence that the government intentionally delayed Green's trial date.  We conclude that this factor weighs against Green.  *See Battis*, 589 F.3d at 678-80.

*3.     Defendant's Assertion of the Speedy Trial Right*

To demonstrate a convincing assertion of the right, the defendant must show a motion or evidence of a direct instruction to counsel to assert the right at a time when it would have had some chance of success.  *Id.* at 681.  This Green has not done.[8]

---

[8]     Green asserted his constitutional right to a speedy trial in a letter he sent to the District Court in July 2009, but informal correspondence by a represented defendant to a court is only a weak assertion of the speedy trial right, particularly when his attorney has asked for a continuance to prepare for trial.  *Battis*, 589 F.3d at 681 & n.7.  Green's bail motions did not mention the Sixth Amendment speedy trial right.

Consequently, this factor also does not weigh in his favor.

### 4. Prejudice

Green argues that he has suffered prejudice because of the lengthy pretrial delay. A defendant can establish prejudice by showing, for example, that his defense was impaired as a result of the delay. *Id.* at 682. Green asserts that two exculpatory witnesses died prior to trial. The first of these two witnesses apparently died in March 2008. The absence of this witness at the time of the November 2, 2009, trial was not caused by any continuance in which the defense did not join because the witness died before the defense team's preparation for trial was complete. *See Douglas v. Cathel*, 456 F.3d 403, 419 (3d Cir. 2006) (noting that trial continuance did not prejudice defendant because the defense team's need to prepare for trial "carried beyond the death" of the witness). Green's attorney had, after all, requested a continuance to prepare for trial in June 2008. As for the second witness, who died approximately one year later, even if the prejudice factor were to weigh in Green's favor, it would be offset by factors two and three, which weigh against him. We therefore see no plainly erroneous violation of Green's Sixth Amendment right to a speedy trial.

### C. Defective Indictment Claims

We review the District Court's legal conclusions de novo and its factual findings for clear error. *United States v. Barbosa*, 271 F.3d 438, 469 (3d Cir. 2001). Green argues that his indictment was deficient for three reasons: (1) counts one, four, and five did not

allege an effect on interstate commerce; (2) counts two, three, and five were not sufficiently specific; and (3) the proof offered at trial as to the amount of loss on counts two and three materially varied from that alleged in the indictment. We disagree.

### 1. Interstate Commerce Requirement

Green argues that under *United States v. Spinner*, the failure to explicitly allege a connection to interstate commerce in counts one, four, and five deprived the District Court of jurisdiction over his indictment.[9] 180 F.3d 514, 515-16 (3d Cir. 1999). We decline to reach the argument because any error in failing to specify a link to interstate commerce was harmless. *See Neder v. United States*, 527 U.S. 1, 15 (1999); *United States v. Esposito*, 771 F.2d 283, 289 (7th Cir. 1985). Counts one, four, and five relied on Green's conviction under § 1029(a)(2), for which an interstate commerce effect must be proven beyond a reasonable doubt. Moreover, the District Court specifically instructed the jury that they must find an interstate commerce link for each count of the indictment,

---

[9]     Count one, conspiracy to violate 18 U.S.C. § 1029(a)(2), did not allege any effect on interstate commerce. Counts two and three, which charged two separate violations of § 1029(a)(2), specifically alleged that Green's conduct had an effect on interstate commerce. Section 1029(a)(2) prohibits the knowing trafficking or use of unauthorized access devices with intent to defraud, if such conduct leads the defendant to obtain anything worth $1,000 or more and if the offense affects interstate or foreign commerce. Section 1029(b)(2) criminalizes a conspiracy to commit any offense under § 1029(a), but it does not specifically reference interstate commerce.

       Counts four and five charged Green with violations of § 1028A, but they did not specifically allege an effect on interstate commerce. Section 1028A(a)(1) provides for a term of imprisonment for anyone who knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person during and in relation to an offense under § 1029(a), but it does not mention interstate commerce.

-20-

and the court's instructions cured any error in the original indictment.

2.     *Specificity and Variance Claims*

Green complains that counts two, three, and five of the indictment were insufficiently specific to inform him of the accusations he faced. We conclude that the indictment was sufficiently detailed under *Hamling v. United States*, 418 U.S. 87, 117 (1974), and *United States v. Saybolt*, 577 F.3d 195, 205 (3d Cir. 2009) (finding that an indictment is sufficient if it contains the elements of the offense to be charged, informs the defendant of what he must defend against, and enables him to plead an acquittal or conviction in bar of future prosecutions for the same charge).

Counts two and three included a specific time frame, a location, a specific credit card number, and the victims' initials. That factual background was enough to notify Green of the particulars of the access device fraud charges against him. Similarly, count five included a time frame, the initials of the victim whose identification was used without authorization, and the allegation that the use of the identification was in relation to a credit card fraud scheme. Such allegations were sufficient to notify Green of the charges he faced and allow him to raise the double jeopardy bar for the same offense in the future.

Finally, Green contends that the government's efforts to prove that his victims suffered over $400,000 in losses due to his fraud constituted a variance from counts two and three of the indictment, which alleged that Green obtained things of value

-21-

"aggregating $1,000 or more" and totaling "at least" $9,000. We disagree.

Although $400,000 is certainly higher than amounts originally specified in the indictment, the latter represented a lower-bounds estimate as signified by the words "at least." The facts proven at trial were therefore not materially different from those in the indictment. *See United States v. Daraio*, 445 F.3d 253, 259 (3d Cir. 2006). Moreover, the District Court found that Green was aware that the government could potentially attempt to prove a much higher amount of loss – a factual finding to which we must defer unless it is clearly erroneous. We conclude that Green was neither prejudiced nor surprised, and that no illegal variance occurred. *See id.* at 261-62.

D.      *Denial of Motion to Suppress Statements*

We review the District Court's denial of Green's motion to suppress for clear error as to the underlying facts, but we exercise plenary review as to its legality in light of the court's properly found facts. *See United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) (citing *United States v. Riddick*, 156 F.3d 505, 509 (3d Cir. 1998)). Whether a *Miranda* waiver was voluntary, knowing, and intelligent is a question of law subjected to plenary review. *United States v. Velasquez*, 885 F.2d 1076, 1086 (3d Cir. 1989).

Green argues that the District Court erred in denying the motion to suppress his inculpatory statements to law enforcement. He contends that because he was represented by counsel at the time, his uncounseled statements were presumptively coerced.[10] He also

---

[10]     Of course, a defendant may waive his *Miranda* rights whether or not he is already represented by counsel, as long as that waiver is voluntary, knowing, and intelligent; there

-22-

argues that he did not voluntarily and intelligently waive his *Miranda* rights and that the contrary testimony of the detective and Secret Service agent should receive little weight.

The District Court determined that Green's waiver was valid based of the testimony of the detective and Secret Service agent at a suppression hearing. The Court specifically found that Green voluntarily agreed to speak with the officers, was advised of his *Miranda* rights, and signed a form waiving constitutional rights. These findings are well-supported by the testimony of both officers and are not contradicted by any evidence in the record; they are not clearly erroneous. Green has failed to point to any evidence that he was coerced. Rather, the record indicates that Green met with the police of his own accord and understood his rights. Accordingly, we affirm the denial of Green's motion to suppress his statements made to the officers.

E.      *Denial of Motion to Suppress Physical Evidence*

We review the District Court's denial of Green's motion to suppress physical evidence for clear error as to the underlying facts, and we exercise plenary review as to the legality of that ruling. *Givan*, 320 F.3d at 458. Accordingly, we review de novo the District Court's evaluation of the magistrate's probable cause determination. *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010). We ask whether the magistrate had a

---

is no presumption that a waiver made by a represented defendant, even during police-initiated interrogation, is invalid. *See Montejo v. Louisiana*, 556 U.S. 778, 786 (2009); *United States v. Whiteford*, 676 F.3d 348, 362 (3d Cir. 2012). A waiver is knowing and intelligent if the defendant had full awareness of both the right being abandoned and the consequences of the decision to abandon it. *Whiteford*, 676 F.3d at 362.

-23-

substantial basis to support his probable cause finding, even if another magistrate might have found the affidavit insufficient to support a warrant. *Id.*

Green argues that the physical evidence seized from his home should have been excluded at trial because the allegations in the affidavit supporting the warrant to search his home did not amount to probable cause that his apartment contained evidence of a crime. We need not resolve the question of probable cause because the police officers who executed the warrant fall within the "good faith" exception to the warrant requirement.

An officer cannot be expected to question a magistrate's determination that probable cause supports a warrant. *United States v. Tracey*, 597 F.3d 140, 150 (3d Cir. 2010) (citing *United States v. Leon*, 468 U.S. 897, 921 (1984)). Thus, the exclusionary rule applies only "when police conduct is 'deliberate, reckless, or grossly negligent,' or when it will deter 'recurring or systemic negligence.'" *Id.* at 151 (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). The good faith exception does not apply where the warrant rests on an affidavit that is so lacking in indicia of probable cause as to render the officer's reliance on it entirely unreasonable. *See id.*

The affidavit in this case was sufficient to allow good faith reliance. *See United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993); *cf. United States v. Zimmerman*, 277 F.3d 426, 432-37 (3d Cir. 2002). Thus, the good faith exception applies and the District Court's denial of Green's motion to suppress is affirmed.

*F.* *Sufficiency of the Evidence Claim*

We view the evidence in the light most favorable to the government and sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). Green contends that the government did not present sufficient evidence demonstrating (1) a link between his fraud and interstate commerce, and (2) that the victim of Count Two did not authorize Green to use the credit card issued in the victim's name, because the victim did not testify at trial. We disagree. Viewing the facts in the light most favorable to the government, a rational juror could find that Green's access device fraud affected interstate commerce.[11] Similarly, we conclude that testimony from the Secret Service agent and financial investigator permitted a rational juror to conclude that Green used the Discover card issued in the victim's name without his permission.[12]

*G.* *Fair Trial and Confrontation Clause Claims*

---

[11] A Mercedes-Benz of Fort Washington employee testified that the parts used to repair a Mercedes-Benz SL500, such as the one the Fort Washington dealership repaired and Green paid for with fraudulent credit cards, come from Germany. One of the fraud victims also testified that his identity was fraudulently used to make purchases in Pennsylvania, Delaware, and New Jersey.

[12] The agent testified that Green told her, during the November 16 interview, that he possessed a Discover credit card under the victim's name and that he applied for the credit card using information either taken from mailboxes or stolen from cars or purses. A financial investigator for Discover Financial Services also testified that all of the charges to the Discover Card in the victim's name were fraudulent. The investigator explained on cross-examination that he knew that the charges were fraudulent because he spoke to the victim over the telephone and that he was "pretty satisfied" that he spoke to

-25-

We review the District Court's management of a trial for abuse of discretion. *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 609 (3d Cir. 1995). Where a motion for recusal based on judicial bias was made before the District Court, we review its denial for abuse of discretion; where no motion was made, we review for plain error. *United States v. Dalfonso*, 707 F.2d 757, 760 (3d Cir. 1983). The District Court's decision to limit cross-examination is likewise reviewed for abuse of discretion. *See United States v. Friedman*, 658 F.3d 342, 356 (3d Cir. 2011). However, if a defendant's right to confront an adverse witness was infringed by excessive limitations on cross-examination, we must determine whether that error was harmless beyond a reasonable doubt. *United States v. Chandler*, 326 F.3d 210, 224 (3d Cir. 2003).

Green argues that the judge's demeanor at trial amounted to error because (1) Green was denied a fair trial when the judge's hostility towards Green gave the jury the impression that he believed Green to be guilty; and (2) the judge should have *sua sponte* recused himself for bias against Green.[13]

We conclude that the District Judge's conduct was not prejudicial. A great deal of the judicial conduct about which Green complains occurred outside of the presence of the jury and therefore could not have communicated anything to the jury. *See United States v. Nobel*, 696 F.2d 231, 237 (3d Cir. 1982) (recognizing that a "trial judge must be

the real cardholder because the speaker was able to answer security questions.

[13]     Green did not make a recusal motion in the District Court.

vigilant not to let his or her tone or gestures indicate the judge's view"); *see also United States v. Beaty*, 722 F.2d 1090, 1093 (3d Cir. 1983). Green also complains that the judge placed time limits on his cross-examination and closing statements, repeatedly asked him if he had any more questions during his cross-examination, and warned him not to ask argumentative questions. We disagree that this amounted to denial of a fair trial. The judge was simply attempting to maintain order; nothing suggests that his tone was intemperate or his requests unreasonable. *See United States v. Donato*, 99 F.3d 426, 435 (D.C. Cir. 1996).

Green has also failed to demonstrate that the judge's attempts to maintain an orderly courtroom were so antagonistic as to require *sua sponte* recusal. Judicial rulings alone almost never constitute a basis for a bias or partiality motion pursuant to 28 U.S.C. § 455(b)(1). *Liteky v. United States*, 510 U.S. 540, 555 (1994). Judicial remarks that are critical of or hostile to the defendant do not merit recusal unless they show such a high degree of favoritism or antagonism as to make fair judgment impossible. *Id*. This Green has not shown.

Finally, Green argues that he was denied his rights under the Confrontation Clause when the District Judge denied his request to recross-examine the detective to whom he made inculpatory statements. We need not decide whether the court erred because any error was harmless.[14] The evidence that came out during redirect of the detective was the

_____

[14] Denial of recross on a proper subject is ground for reversal only if the denial was harmful, considering the importance of the witness' testimony, whether the testimony was

-27-

same evidence testified to by the Secret Service agent during her direct examination; accordingly, the detective's testimony was cumulative and corroborated by other testimony. Green was also given a generous amount of time to cross-examine the detective and chose not to question him about the content of his confession.

## H.     Sixth Amendment Right of Self-Representation

We exercise plenary review over Green's contention that the District Court's ruling violated his Sixth Amendment right of self-representation. *See United States v. Peppers*, 302 F.3d 120, 127 (3d Cir. 2002). Green contends that his exclusion from the District Court's sidebars during jury selection violated his Sixth Amendment right.[15] His argument is foreclosed by *United States v. Isaac*, 655 F.3d 148, 152-54 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 2700 (May 29, 2012), which held that a *pro se* defendant who proceeded with the assistance of standby counsel waived his Sixth Amendment right of self-representation at a sidebar when he raised no objection to the District Court's decision to exclude him from sidebars and acquiesced in standby counsel's participation

---

cumulative, the presence or absence of corroborating or contradictory evidence, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. *United States v. Riggi*, 951 F.2d 1368, 1376 (3d Cir. 1991).

[15]     Although Green frames this contention, in part, as based on a deprivation of the opportunity to select an impartial jury, citing *United States v. Weaver*, 267 F.3d 231, 235-36 (3d Cir. 2001), all of his arguments focus on the District Court's decision to consult Attorney McHugh, rather than Green himself, on jury selection issues. At no point does Green directly challenge the District Court's determination that Green did not properly strike Juror Nine. It seems more appropriate, then, to characterize this contention on appeal as purely one of violation of Green's right to self-representation.

in his stead.  Like the defendant in *Isaac*, Green waived his right to participate in the jury

selection sidebars when he failed to object to his standby counsel's participation in his

place.[16]

I.      *Ineffective Waiver of Counsel Claim*

We exercise plenary review over the question whether Green knowingly and

intelligently waived his right to counsel, and we review the facts found by the District

Court for clear error.  *See Peppers*, 302 F.3d at 127.  Deprivation of the right of self-

representation is structural error and hence is never harmless.  *Id.*  We therefore indulge

every reasonable presumption against a waiver of counsel.  *United States v. Jones*, 452

F.3d 223, 229-30 (3d Cir. 2006).

Green appeals the District Court's decision to allow him to proceed *pro se* and

contends that the District Court erred:  (1) by not inquiring into whether substitute

counsel should be appointed; (2) when it misinformed Green as to the offense level that

would be applied to him for sentencing purposes; and (3) by informing Green that if he

waived his right to counsel, he could not reassert it and the court would not appoint an

attorney for him at sentencing.

---

[16]     The District Judge also gave Green the opportunity to voice any such objections
when he asked both Green and the prosecutor if they had any further questions that they
would like the judge to ask the venire.  The court had warned Green (before he waived
counsel) that Green would not be free to move about the courtroom in the same manner as
an attorney because, as an inmate, he was under the supervision of court security.

*1. Substitute Counsel*

Green asserts that the District Court erred under *United States v. Welty*, 674 F.2d 185, 187 (3d Cir. 1982), by failing to inquire into Green's reasons for his dissatisfaction with his attorney on October 30, 2009. To warrant a substitution of counsel on the eve of trial, a defendant must "show good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney." *Id.* at 188.

Contrary to Green's assertions, the District Court did engage in this inquiry with Green on March 26, 2009, when it held a hearing on defense counsel's motion to withdraw as Green's attorney. The District Court concluded that Green had not made a showing of good cause and informed Green that he would have to choose between proceeding *pro se* or working out his issues with his attorney. Notably, Green has not asserted that the District Court's March 2009 determination was clearly erroneous. *See United States v. Goldberg*, 67 F.3d 1092, 1098 (3d Cir. 1995). In light of the fact that the District Court had already ruled on Green's request for substitute counsel, that Green unequivocally requested to represent himself at trial on October 30, and that, when asked why he wanted to represent himself, Green did not present any new reasons for dissatisfaction with his attorney, the court did not err by failing to inquire into the matter in detail a second time.

*2. Offense Level*

Although the District Court misstated Green's offense level as six  rather than

twenty, Green's waiver was nonetheless knowing and voluntary.  Green affirmatively, unequivocally, and repeatedly stated his desire to represent himself.  The District Court thoroughly explained the risks of self-representation and the fact that Green would have to obey the rules of evidence and criminal procedure, and it admonished Green that he was making an unwise decision.  *See Jones*, 452 F.3d at 229-32; *Peppers*, 302 F.3d at 129, 132; *United States v. Stubbs*, 281 F.3d 109, 119-20 (3d Cir. 2002).  Green was also properly informed of the range of possible punishments to which he could be subjected.  *See United States v. Booker*, 684 F.3d 421, 428 (3d Cir. 2012).  The government correctly stated the maximum punishment applicable for all five counts (such that Green had a chance to consider the maximum possible punishment he could be facing if he was found guilty on all or some of the counts), and the misstatement in offense levels did not alter the maximum sentences applicable to Green's offenses.  The District Court also specifically warned Green that, if circumstances merited it, the court could depart upward from the Guidelines range.  Moreover, Green's attorney acknowledged on the record that, prior to Green's final decision to proceed *pro se* on November 2, 2009, Green received a letter from the government notifying him that the government was increasing his offense level to twenty based on witness testimony.  We therefore conclude that the court's misstatement of Green's offense level did not render his waiver unknowing or involuntary.

*3.      Permanent Waiver of Counsel*

Green contends that it was error for the District Court to warn him that, if he gave up his right to counsel, the decision would be binding for all purposes and he would have to represent himself for the balance of the proceedings. We conclude that the District Court's statement did not render Green's waiver of counsel unknowing or involuntary.

Once waived, the Sixth Amendment right to counsel is no longer absolute and consideration of a defendant's post-waiver request for the reinstatement of counsel is well within the discretion of the District Court. *United States v. Leveto*, 540 F.3d 200, 207 (3d Cir. 2008). The court warned Green about the permanency of his waiver in an attempt to encourage Green *not* to waive counsel, and the court's statement did not dissuade Green from reasserting his right to counsel. Rather, Green requested the reappointment of counsel prior to sentencing – a request that the District Court granted despite its earlier statement.

*J.      Denial of Jury's Request for Exhibits in Jury Room*

The admission or exclusion of evidence being a matter particularly suited to the broad discretion of the trial judge, we review the District Court's evidentiary rulings for abuse of discretion. *See United States v. Casoni*, 950 F.2d 893, 902 (3d Cir. 1991).[17] If

---

[17]      Green agrees that an abuse of discretion standard of review applies here, but contends that the denial of a jury's request to see an exhibit is automatically an abuse of discretion unless the denial was grounded in: (1) concerns about slowing down the trial; or (2) concerns about causing the jury to place undue emphasis on the requested exhibit. For the origins of this test, he cites two inapposite cases that dealt with the reading of trial testimony or the provision of written trial transcripts to a jury. *See United States v.*

an evidentiary ruling is an abuse of discretion, we then ask if it is harmless. *See id.*; Fed. R. Crim. P. 52(a).

Denying the jury's request to see the two exhibits at issue here, D2 and D5, was not an abuse of discretion. Exhibit D2 was the Secret Service agent's affidavit that Green attempted to use at trial to show inconsistencies between the agent's various written and verbal statements. The agent admitted on cross-examination that her affidavit was inconsistent in some ways with her grand jury testimony. However, the affidavit also described a great deal of alleged criminal conduct by Green for which he was not charged, as well as information about other victims of Green's fraudulent schemes. The District Court did not err in denying the jury's request to see an exhibit containing information both prejudicial to Green and outside of the scope of the trial.[18]

Exhibit D5 was the state criminal complaint against Green written by the detective who questioned him, and it recounted the chronology of events at the Mercedes-Benz dealership. The probative value of D5 was extremely limited because Green elicited no

---

*Shabazz*, 564 F.3d 280, 285 (3d Cir. 2009); *United States v. Bertoli*, 40 F.3d 1384, 1400 (3d Cir. 1994). The issue before this Court concerns exhibits, not trial transcripts.

[18]     Even if the District Court's decision was an abuse of discretion, any error was harmless. Green's cross-examination of the agent had already revealed to the jury that her affidavit was in some respects inconsistent with her other statements and reading the actual affidavit would not have been likely to change the jury's assessment of the agent's credibility. In any event, because Green objected to the jury's request to see the agent's other statements, the jury would not have had the opportunity to compare her statements side-by-side for consistency.

testimony about its content.[19]  It was therefore not an abuse of discretion for the District

Court to deny the jury's request to see Exhibit D5.  Alternatively, any error was harmless

because the jury had already heard relevant portions of D5 read aloud at trial.

*K.     Sentencing*

We review the District Court's sentencing decisions for reasonableness, its

interpretation of the Sentencing Guidelines de novo, and its factual findings for clear

error.  *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Grier*, 475 F.3d 556,

570 (3d Cir. 2007) (en banc).  Green asserts error in four of the District Court's

sentencing decisions:  (1) calculation of the loss suffered by his victims; (2) the finding

that Green was on probation when he committed his offenses; (3) the finding that he was

previously sentenced to imprisonment exceeding one year and one month; and (4) the

decision to depart upward and add one level to Green's criminal history category.

*1.     Loss Calculation*

Green argues that the District Court erred in calculating the loss suffered by his

victims pursuant to U.S.S.G. § 2B1.1 because the court relied on evidence not in the

record.  Loss amounts must be established by a preponderance of the evidence.  *United*

*States v. Ali*, 508 F.3d 136, 145 (3d Cir. 2007).  Section 2B1.1 Application Note 3(C)

---

[19]     Green unsuccessfully attempted to cross-examine the agent using D5.  Green also
used D5 during his cross-examination of the detective; he asked the detective to read out
a paragraph of the state criminal complaint and then attempted to point out an
inconsistency between that paragraph and the agent's affidavit (Exhibit D2), although he
was prevented from doing so because of an objection from the prosecution.

provides that the court "need only make a reasonable estimate of the loss." In making a sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence, as long as it has "sufficient indicia of reliability." U.S.S.G. § 6A1.3; *see also United States v. Inigo*, 925 F.2d 641, 660 (3d Cir. 1991).

The court added fourteen levels to Green's offense level because it found, citing the testimony of a particular victim,[20] that Green caused over $400,000 in losses to his victims. In reality, that victim had not testified to his losses because Green successfully objected to the testimony as hearsay. Nevertheless, both the prosecutor and Green's newly-appointed defense attorney agreed that the victim had testified to his losses. Green now argues that the District Court erred when it mistakenly relied on testimony that was not given at trial. Because Green's attorney acquiesced in the error, plain error review applies. *See United States v. Watson*, 482 F.3d 269, 274 (3d Cir. 2007). If we find plain error, we have discretion to correct it, but we will do so only to prevent a miscarriage of

---

[20] Two documents before the District Court at the sentencing hearing represented that the victim lost over $400,000 due to Green's fraud. The first was the PSR, which reported that the victim told the police that he was informed that $400,000 of fraudulent purchases had been made in his name. Green's attorney objected to that paragraph of the report at sentencing, and the District Court never ruled on the objection. The government also submitted a victim-impact statement in which the victim stated that almost half a million dollars were spent in his name in the fraud scheme. Although both of these documents were before the District Court at sentencing, the judge repeatedly stated that he was relying solely on the victim's testimony at trial in calculating the amount of loss caused by Green. As a result, the court never explicitly discussed or decided whether the representations in the PSR and victim-impact statement as to loss were reliable.

justice. *Id.*

We decline to reverse the District Court because other evidence in the record – specifically, the PSR and a victim impact statement – supported its loss determination. As such, any error would not amount to a miscarriage of justice.

2. *Probation*

U.S.S.G. § 4A1.1(d) allows the District Court to add two points to the defendant's criminal history score if the defendant committed the offense of conviction while on probation. Both sides agree that Green was on probation through June 12, 2007, but Green argues that since he was not indicted until January 2008, § 4A1.1(d) should not apply. Green misreads the Guidelines; the relevant question is whether Green was on probation when he *committed* his fraud offenses, not at the time he was *indicted* for those offenses. The District Court found, based on the indictment and the evidence at trial, that Green was involved in his fraud offenses as early as January 2007. **JA 1314.** Moreover, a victim testified that he observed fraudulent activity using his identity as early as March 2007. The court did not err in adding these points to Green's criminal history score.

### 3. *Former Sentence of Imprisonment*

U.S.S.G. § 4A1.1(a) allows the court to add three points to a defendant's criminal history score if the defendant has a prior sentence of imprisonment exceeding one year and one month. Green's PSR stated that he was found guilty of engaging in a criminal conspiracy in April 2002 and was sentenced to five to ten years' incarceration, which was later reduced to time served. The government also provided the District Court with a copy of a Pennsylvania Superior Court decision stating that Green received an amended sentence of eleven and a half to twenty-three months. Consequently, the District Court did not err in adding three points to Green's score.[21]

### 4. *Criminal History Upward Departure*

U.S.S.G. § 4A1.3(a)(1) provides that, if reliable information indicates that the defendant's criminal history category substantially underrepresents the seriousness of the defendant's criminal history, an upward departure in the criminal history category may be warranted. In making that determination, the court can consider prior similar adult criminal conduct not resulting in a conviction. § 4A1.3(a)(2)(E).

Before the sentencing hearing, at the District Court's invitation, the government filed a supplemental memorandum seeking an upward departure. The eleven-page memorandum described a great deal of uncharged criminal conduct involving

---

[21]    In any event, any error was harmless because both sides agreed at the sentencing hearing that Green's final criminal history category would be a IV – whether he received three points under § 4A1.1(a) or one point under § 4A1.1(c).

fraudulently acquired cars and unauthorized credit card use, including dates and details about the vehicles involved. Based on the government's presentation, the District Court found that Green had engaged in numerous episodes of uncharged identity theft, fraud, and vehicle title fraud, and it granted the upward departure. On appeal, Green contends that the District Court erred in its determination that the departure applied, because the government's information was not sufficiently reliable.

A District Court may consider any information about the background and character of a defendant in the context of granting an upward departure, but only if such information is reliable. *United States v. Warren*, 186 F.3d 358, 364-65 (3d Cir. 1999). This Court has held that the standard "should be applied rigorously." *Id.* at 365. Green is correct that the evidence in the government's memorandum and presentation was not corroborated before the District Court, and the government points to nothing in the record supporting its allegations in its briefing before this Court. Nevertheless, the government's memorandum was very detailed, including dates, amounts of money, addresses, and the initials of the victims. Given the level of detail, the District Court did not err in finding the memorandum sufficiently reliable to justify an upward departure.

L. *Forfeiture Issues*

We review the District Court's factual findings for clear error and its determination that the facts adduced constituted proper forfeiture de novo. *See United States v. Sokolow*, 91 F.3d 396, 415 (3d Cir. 1996); *see also United States v. Baker*, 227

F.3d 955, 967 (7th Cir. 2000); *United States v. 1977 Porsche Carrera*, 946 F.2d 30, 33 (5th Cir. 1991).

Green argues that the District Court erred in ordering the forfeiture of his Mercedes-Benz because the government did not demonstrate a nexus between Green's convictions and the car. Where the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. Fed. R. Crim. P. 32.2(b)(1)(A). That determination may be based on evidence already in the record and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. Fed. R. Crim. P. 32.2(b)(1)(B).

Under 18 U.S.C. § 982(a)(2), when a person is convicted of a violation of 18 U.S.C. § 1029, the District Court is directed to order the forfeiture of any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation. Section 1029(c)(1)(C) provides that the punishment for an offense under § 1029(a) includes forfeiture of any personal property used or intended to be used to commit the offense. The government must prove criminal forfeiture allegations by a preponderance of the evidence. *See United States v. Voigt*, 89 F.3d 1050, 1083 (3d Cir. 1996).

After conducting a forfeiture hearing, the District Court ordered that Green's Mercedes-Benz be forfeited because the evidence established both that the car was

purchased with proceeds connected to his offenses and that the car was used in carrying out Green's offenses. The court found that there was direct evidence that Green used fraudulently obtained credit cards to pay for repairs to the car. The court also noted that documents and letters in a victim's name were found in the vehicle when it was seized. Further, the court found compelling circumstantial evidence that Green purchased the car with proceeds from his criminal conduct: in April 2007 Green had no verified income other than the sale of illegally acquired cars and Green purchased the car during the period he admitted he was using fraudulent credit cards to buy cars. The court also observed that a Secret Service agent testified at trial that Green used a particular notary stamp to fraudulently clear liens, that notary's stamp was recovered during the December 2007 search of Green's apartment, and the purchase paperwork for his Mercedes-Benz had an illegible seller's name and the same notary stamp. Finally, the court noted that title for the car indicated that it was salvaged and purchased for only $100.

Based on these findings, the court concluded that the evidence was sufficient to establish that the car was purchased with funds either directly or indirectly traceable to Green's criminal activities, because those were the only funds available to Green at the time of the purchase. Moreover, the suspicious details surrounding the purchase, such as the notary stamp and the low purchase price, supported the conclusion that the car was purchased with fraudulent funds. Finally, the government established that Green used the car to commit or facilitate his crimes because Green paid for repairs to the car with stolen

credit cards and kept documents related to one of his victims in the car.

Green does not argue that any of the factual findings made by the District Court were clearly erroneous. Instead, he focuses on a state trooper's admission at the forfeiture hearing that he did not know how the Mercedes-Benz was purchased, and the Secret Service agent's testimony that the car was not a fraudulent purchase. While that testimony certainly supports Green's position that there is no *direct* evidence that he purchased the car with funds traceable to his crimes of conviction, it does not undermine the circumstantial evidence that the car was purchased using funds Green obtained by illegally purchasing and then selling high-end cars. Thus, we see no error in the District Court's conclusion that the government proved by a preponderance of the evidence that forfeiture was appropriate.

## III. CONCLUSION

We will, therefore, affirm the judgment of the District court, including its forfeiture order.